# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
## CASE NO. 12-3829

| | |
|---|---|
| MICHAEL HALFACRE, Director of New Jersey Division of Alcoholic Beverage Control,<br><br>Appellant,<br><br>v.<br><br>ROBERT AND JUDY FREEMAN; WALTER HANSEL WINERY, INC.; MEYER AND BEVERLY FRIEDMAN,<br><br>Appellees. | On Appeal from a Final Judgment of the United States District Court for the District of New Jersey Granting Attorneys' Fees to Appellees Pursuant to 42 U.S.C. § 1988(b)<br><br><br>Sat Below:<br>Hon. Katharine S. Hayden, U.S.D.J. D.N.J.<br>Civil Action No. 2:03-cv-03140 |

---

## BRIEF FOR APPELLANT
## AND APPENDIX VOLUME I OF III (STATE APP. 1-51)

---

JEFFREY S. CHIESA
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, New Jersey 08625
973-648-3540
*Attorney for Appellant Michael Halfacre, Director of New Jersey Division of Alcoholic Beverage Control*

Andrea M. Silkowitz, Assistant Attorney General
Of Counsel
Lisa D. Kutlin, Deputy Attorney General
On the Brief
LISA.KUTLIN@DOL.LPS.STATE.NJ.US

# <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ............................................................................ iii

**BASIS FOR JURISDICTION** ........................................................................1

**STATEMENT OF ISSUES** .............................................................................2

**STATEMENT OF THE CASE**........................................................................3

**STATEMENT OF FACTS**...............................................................................5

**STANDARD OF REVIEW** ............................................................................15

**SUMMARY OF ARGUMENT**......................................................................16

**ARGUMENT**...................................................................................................18

    I.     Because The District Court Lacked Authority To Grant Fees This Court Had Denied, The Fee Award Must Be Reduced By $191,170...............18

    II.    The Fee Award Must Be Reduced By Approximately $283,000 To Account For Time Spent Unsuccessfully Challenging the Direct Shipment Ban, Which This Court Upheld............................................24

    A.    The District Court Should Not Have Compensated Plaintiffs For Time Spent On This Litigation Before Any Winning Issues Were Added To It. ...........................................................................26

i

B.      Because Plaintiffs Did Not Prevail On A Primary Issue In the Litigation, The District Court Should Have Attempted To Reduce The Judgment Proportionately. ....................................................31

III.    Because Fees Are Awarded to Prevailing Parties, Not Counsel, the Judgment Must be Further Reduced by $67,150 Awarded for Non-Prevailing Parties. ..................................................................34

**CONCLUSION** ..................................................39

**CERTIFICATION OF BAR MEMBERSHIP**.............................40

**CERTIFICATION OF COMPLIANCE** .......................41

**CERTIFICATION OF SERVICE** ................................42

## TABLE OF CONTENTS FOR APPENDIX

## Volume I of III

Notice of Appeal (DDE # 182)…………………………………...State App. 1

August 30, 2012 District Court Order Granting Motion for Attorneys' Fees (DDE # 180)…………………………………………………State App. 3

August 30, 2012 District Court Opinion (DDE # 179) ……………State App. 5

# TABLE OF AUTHORITIES

### CASES CITED

Barrett v. W. Chester Univ., 636 F. Supp. 2d 439 (E.D. Pa. 2009)....................37

Berne Corp. v. Gov't of the V.I., No. 2000-141 (D.V.I. Sept. 30, 2010)............21

Blair v. Scott Specialty Gases, 283 F.3d 595 (3d Cir. 2002) ..............................20

Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't. of Health and Human

Res., 532 U.S. 598 (2001)...................................................................................12

Chonko v. Comm'r of SSA, 624 F. Supp. 2d 357 (D.N.J. 2008)........................34

Equivest St. Thomas, Inc. v. Virgin Islands, 46 V.I. 447 (D.V.I. 2004)............21

Freeman v. Corzine, 629 F.3d 146 (3d Cir. 2010)...................................... passim

Freeman v. Fischer, 563 F. Supp. 2d 493 (D.N.J. 2008)............................ 10, 24

Freeman v. Fischer, No. 03-3140 (D. N. J. Aug. 30, 2012) ..................................1

Granholm v. Heald, 541 U.S. 1062 (2004)............................................................6

Granholm v. Heald, 544 U.S. 460 (2005)........................................................7, 12

Hanover Potato Products, Inc. v. Shalala, 989 F.2d 123 (3d Cir. 1993) .............15

Hawa Abdi Jama v. Esmor Corr. Servs., 577 F.3d 169 (3d Cir. 2009)................1

Hensley v. Eckerhart, 461 U.S. 424 (1983)................................................. passim

Huffman v. Saul Holdings, Ltd. P'ship, 262 F.3d 1128 (10th Cir. 2001)...........21

Role Models Am., Inc. v. Brownlee, 353 F.3d 962 (D.C. Cir. 2004) .................37

<u>Sklaroff v. Allegheny Health Educ. Research Found.</u>, No. 95-4758 (E.D. Pa. Feb. 2, 1998). ...................................................................................21

<u>Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.</u>, 489 U.S. 782 (1989)....2, 24, 25, 26

<u>Todd & Co. v. Securities & Exchange Comm.</u>, 637 F.2d 154 (3d Cir. 1980) ....20

<u>Venegas v. Mitchell</u>, 495 U.S. 82 (1990) ................................................. 3, 17, 34

<u>Yaron v. Twp. of Northampton</u>, 963 F.2d 33 (3d Cir. 1992) ...................... passim

## STATUTES CITED

2004 N.J. Laws 102 ....................................................................................6

2011 N.J. Laws 207 ..................................................................................11

28 U.S.C. § 1254.....................................................................................17

28 U.S.C. § 1291.......................................................................................1

42 U.S.C. § 1988(b) .......................................................................... passim

N.J. Stat. Ann.  § 33:1-10(2b)................................................................12

N.J. Stat. Ann. § 33:1-10(2a) (2003) .....................................................4

N.J. Stat. Ann. § 33:1-10(2b) (2003) .....................................................4

N.J. Stat. Ann. §§ 33:1-1 to -97 ............................................................4

N.J. Stat. Ann. §§ 33:1-28.1 to -28.4 (2003) (repealed)........................5

iv

RULE CITED

Fed. R. Civ. P. 54(d)(2) ..........................................................................1

# BASIS FOR JURISDICTION

On August 30, 2012, Senior U.S. District Judge Hayden granted Appellees' motion for fees and costs, pursuant to 42 U.S.C. § 1988(b) and Fed. R. Civ. P. 54(d)(2), in the amount of $802, 221. Freeman v. Fischer, No. 03-3140 (D. N. J. Aug. 30, 2012 Order) (State App. 3-4).

On September 28, 2012, Michael Halfacre, in his capacity as Director of New Jersey Division of Alcoholic Beverage Control, filed a timely Notice of Appeal challenging that award. (State App. 1). This Court has jurisdiction pursuant to 28 U.S.C. § 1291. Hawa Abdi Jama v. Esmor Corr. Servs., 577 F.3d 169, 173 (3d Cir. 2009) ("This Court has jurisdiction to review the award of a statutory attorney's fee under 28 U.S.C. § 1291, once the award is reduced to a definite amount.").

1

## <u>STATEMENT OF ISSUES</u>

This appeal presents the following issues:

(1) Must this Court vacate or reduce the district court's judgment by approximately $190,000 because the district court unlawfully (a) considered Plaintiffs' request for appellate fees and costs that this Court had denied; (b) held that <u>Yaron v. Twp. of Northampton</u>, 963 F.2d 33 (3d Cir. 1992), permits a fees and costs award for an appeal after this Court denied such a request; (c) granted the request for appellate fees in the amount of $186,136 (State App. 24-28 ) (Dist. Ct .Op. 20-24); and granted the request for time spent arguing to the District Court that <u>Yaron</u> did not apply (State App. 36-37) (Dist. Ct. Op. 32-33);

(2) Whether the District Court erred by awarding $200,000 in fees and costs incurred before the Complaint was amended to add any successful claims, under 42 U.S.C. § 1988(b), <u>Hensley v. Eckerhart</u>, 461 U.S. 424 (1983), and <u>Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.</u>, 489 U.S. 782 (1989), and failed to further reduce the fees and costs incurred thereafter even though Plaintiffs failed to prevail on the primary issue they pursued in this litigation ) (State App. 21-24, 34, 36-37)  (Dist. Ct. Op. at 17-20, 30 , 32-33,19-20) ; State App. 310-11) (State's Dist. Ct. Fee Br. at 33-34);  and

2

(3) Because fees and costs are awarded to prevailing parties and not to counsel, must the judgment be further reduced by $67,150 for fees and costs incurred advocating for parties who were not prevailing because they were dismissed from or denied the right to join the case as plaintiffs, under <u>Venegas v. Mitchell</u>, 495 U.S. 82, 87 (1990) (State App. 34-36) (Dist. Ct. Op. at 30-32)?

## **STATEMENT OF THE CASE**

Appellees, who are four New Jersey consumers of wine and one California winery, sued the Director of the New Jersey Division of Alcoholic Beverage Control ("the State"), alleging that the State's laws and regulation of the interstate sale and distribution of wine violated the U.S. Constitution's dormant Commerce Clause. This Court held that the laws were constitutional insofar as they banned direct sales to consumers, but violated the dormant Commerce Clause in other respects. This Court remanded for a remedy and denied a request for fees. <u>Freeman v. Corzine</u>, 629 F.3d 146 (3d Cir. 2010).

After remand, the litigation was stayed, the New Jersey Legislature rewrote relevant statutes, and the parties entered into a consent agreement that concluded the litigation. Thereafter, the U.S. District Court for the District of New Jersey granted Appellees' contested request for fees and costs with only

3

two minor reductions, and entered judgment in the amount of $802,221, from which the State now appeals.

## STATEMENT OF FACTS

This matter arises from litigation challenging the State's regulation of the sale and distribution of wine, the New Jersey Alcoholic Beverage Control Act, N.J. Stat. Ann. §§ 33:1-1 to -97. Plaintiffs/Appellees, four New Jersey residents and a California winery, contended that the State impermissibly burdened interstate commerce, in violation of the dormant Commerce Clause, by restricting New Jersey consumers' abilities to purchase out-of-state wines.

In 1933, the Legislature established a comprehensive statutory scheme regulating the sale, distribution and consumption of alcohol in New Jersey. N.J. Stat. Ann. §§ 33:1-1 to -97. Anyone who wishes to make, sell, or distribute wine in New Jersey must be licensed; however, an unlicensed person may transport any amount of wine for personal use between any two points in New Jersey. N.J. Stat. Ann. § 33:1-2(a).

During the course of this litigation, the State permitted only wineries based in New Jersey or using New Jersey grapes to sell their wines at retail to consumers at the winery sites and at six salesrooms in New Jersey. N.J. Stat. Ann. § 33:1-10(2a) (2003) (plenary wine license), N.J. Stat. Ann. § 33:1-10(2b) (2003) (farm winery license). The laws for both farm and plenary wine licenses contemplated agricultural use of the soil of New Jersey in at least some part of

the wine-making process.  Non-New Jersey wineries could not sell directly to consumers, but rather, had to distribute their wines through a three-tiered system of manufacturer, wholesaler, and then retailer.  See Freeman v. Corzine, 629 F.3d at 151-52 (explaining State's regulation of wine).

Furthermore, in 2003, when this lawsuit commenced, New Jersey law also permitted only in-state wineries to ship wines directly to the homes of New Jersey residents,  N.J. Stat. Ann. §§ 33:1-28.1 to -28.4 (2003) (repealed), and Plaintiffs focused their Complaint on that issue.  Specifically, the original Complaint, filed on July 2, 2003, challenged New Jersey laws only insofar as they prohibited the direct shipment of out-of-state wines to New Jersey adults at their homes.  (State App. 65-73).  The only remedy Plaintiffs sought was an injunction permitting non-New Jersey wineries to ship wine directly to adult New Jersey residents.  (State App. 72-73).

While this case was pending, the U.S. Supreme Court granted certiorari in Granholm v. Heald, 541 U.S. 1062 (2004), to decide whether a State's regulatory scheme that permits in-state wineries to ship alcohol to consumers directly but restricts the ability of out-of-state wineries to do so violates the dormant Commerce Clause.  Because of the similarity between Granholm and this case, the District Court administratively terminated this case without

6

prejudice to the right of the parties to move to reopen after the Supreme Court decided Granholm v. Heald.   (June 7, 2004 Order) (DDE # 26).   While Granholm was pending, New Jersey enacted legislation to rescind the authority of New Jersey's in-state wineries to ship directly to consumers, 2004 N.J. Laws 102 (July 14, 2004), thereby eliminating discrimination between in-state and out-of-state wineries with regard to direct shipment.

In 2005, the Supreme Court decided that state regulatory schemes that permit in-state wineries to sell wine directly to consumers but prohibit out-of-state wineries from doing so discriminate against interstate commerce in violation of the Commerce Clause, Art. I, § 8, cl. 3, and that the discrimination is neither authorized nor permitted by the Twenty-first Amendment.  Granholm v. Heald, 544 U.S. 460, 466 (2005).

Thereafter, the District Court reopened this case at Plaintiffs' request. Plaintiffs continued to argue that a ban on direct shipment impermissibly burdened interstate commerce, even though the ban applied to both in-state and out-of-state wineries.  Plaintiffs moved for judgment on the pleadings, the State moved to dismiss for failure to state a claim, and the District Court denied both motions as premature.  (State App. 89-92).  Discovery proceeded and the pretrial

scheduling order set August 17, 2006 as the deadline for an amended complaint. (State App. 112).

On July 31, 2006, Plaintiffs filed a Second Amended Complaint (State App. 93-101), wherein the winery plaintiffs alleged for the first time that they would sell to restaurants and retailers in New Jersey if the litigation were successful. (State App. 95-96) (Sec. Am. Compl. ¶ 12). Previously, no plaintiff sought anything other than direct sales to consumers. See (State App. 77) (Am. Compl. ¶ 13) (wineries intend to ship direct to New Jersey residences if laws struck down) and (State App. 68) (Compl. ¶ 13) (same). However, even after the amendment, the aim of the litigation remained an injunction against New Jersey laws insofar as they "prohibit or punish the sale or delivery of wine from out-of-state wineries directly to an adult New Jersey resident." (State App. 99) (Second Am. Compl. Req. for Relief ¶ B).

In fact, from the initiation of this case in 2003 until that Second Amended Complaint was filed in July 2006, the only matter in controversy was whether the State's ban on sales and shipments of wine to consumers directly to their homes in New Jersey was constitutional. And, even post-amendment, direct shipment was the sole issue for which Plaintiffs requested relief.

8

Plaintiffs filed a Third Amended Complaint on August 15, 2006, two days before the deadline for doing so, removing the New Jersey Attorney General as a party.  On September 20, 2006, after discovery revealed negative facts that might impact standing, one of the plaintiffs, Oliver Wine Company, was voluntarily dismissed.  (State App. 126) (Sept. 20, 2006 Stip. and Ord. of Dismissal).

Then, on November 22, 2006, in direct contravention of the pretrial scheduling order, Plaintiffs' counsel attempted to remove as plaintiff the remaining winery, Appellee Hansel Winery, and to substitute another winery, Chateau Winery, as a plaintiff.  (State App. 129).  In making that request, more than three months past the deadline for doing so, Plaintiffs' counsel conceded that any relief granted in this case would not benefit Appellee Hansel winery, which no longer sought to ship wine into New Jersey because its business plan had changed.  (Id.).  Because Plaintiffs failed to show good cause for altering the scheduling order and filing an untimely pleading that added a new party at such a late date in the case, the court denied that request to remove Hansel and add Chateau Winery as a party.  (State App. 133) (Dec. 26, 2006 Mag.'s Ord. Denying Intervention).

Despite those unsuccessful maneuvers to produce a winery plaintiff with a real stake in the case, Plaintiffs' counsel ultimately sought – and the District Court awarded – fees and costs for counsels' time spent working for each of those wineries: Oliver Wine Co., which dropped out of the case before it could have possibly "prevailed"; Chateau Winery, which was not allowed into the case; and Appellee Hansel Winery, which conceded it had no real interest in the case, and had therefore tried to get out.  (State App. 35).[1]

After the District Court denied Plaintiffs' late motion to amend the Complaint, it adjudicated the parties' cross-motions for summary judgment and held that Plaintiffs had standing to pursue this litigation, the statutory scheme at issue was constitutional in some respects, and that it was not constitutional in other respects.  Freeman v. Fischer, 563 F. Supp. 2d 493 (D.N.J. 2008).  The parties both appealed to this Court.

In 2010, this Court held that the ban on direct shipment was constitutional, but that other aspects of the statutory scheme were unconstitutional, and remanded for "a determination of the appropriate remedy."

---

[1] Although the State challenged the fee request for the wineries, the District Court did not reduce the fees awarded due to the wineries' limited success.

10

Freeman v. Corzine, 629 F.3d at 164. In addition, this Court denied Appellees' requests for fees and costs pursuant to 42 U.S.C. § 1988(b).

In fact, this Court thrice denied Appellees' attempts to obtain prevailing party fees and costs incurred in that appeal. Similarly, the Court did not remand the issue of appellate fees to the District Court as it did the rest of the case; rather, it expressly and repeatedly denied the request. (State App. 52-58).

First, on June 30, 2011, this Court issued an Order denying the request for $186,136 in fees, and noted that the late District Judge Pollak, who was sitting on the panel by designation, would have granted the request. (State App. 52). Second, on July 6, 2011, this Court filed an Amended Order denying Appellees' request for fees and costs related to the appeal, appending Judge Pollak's written dissent. (State App. 54-56). In that dissent, Judge Pollak assumed that the majority did not deem Appellees to be prevailing parties entitled to compensation under 42 U.S.C. § 1988(b). (Id.). The majority provided no response to that dissent.

Appellees then filed a request for rehearing *en banc* on their request for appellate fees, which this Court rejected. (State App. 57-58) (August 16, 2011 Order denying "Sur Petition for Panel Rehearing with Suggestion of Rehearing *En Banc*."). Given three opportunities to award fees, to reconsider its denial of

11

fees, or to remand the issue of fees to the District Court, this Court consistently refused Appellees' requests.

After remand, the litigation was stayed with Appellees' consent,[2] the New Jersey Legislature rewrote relevant statutory provisions, and the remaining parties entered into a consent agreement that concluded the substance of the litigation. (State App. 59-64).

Specifically, in January 2012, New Jersey changed its alcoholic beverage licensing scheme to extend the same distribution privileges to in-state and out-of-state wineries; in addition, the law allows both in-state and out-of-state wineries to ship directly to consumers. 2011 N.J. Laws 207.[3] In a Consent

---

[2] Cumulatively, the litigation has been inactive for approximately five years, including a one-year stay in June 2004 awaiting the decision in Granholm v. Heald, 544 U.S. 460 (2005), a ten-month lag between the motion for summary judgment and the decision (Dist. Ct. Docket Items 127 and 128), a two-and-a-half-year stay while the non-compensable appeal was pending (DDE #135 and 139), and an eight-month administrative termination in 2011 while the New Jersey Legislature rewrote the State's alcohol sales and distribution laws (DDE # 147 and 151).

[3] Because this Court explicitly rejected Appellees' constitutional challenge to the direct shipping ban, Freeman, 629 F.3d at 164, that change was a voluntary public policy choice and time spent litigating the direct-shipping issue must not be compensated, pursuant to the dictates of Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't. of Health and Human Res., 532 U.S. 598 (2001).

Order entered April 24, 2012, the parties agreed that the new scheme resolved

the litigation, with one unintentional oversight:

> The new law explicitly and/or implicitly resolved the
> issues remanded by the Third Circuit, except that the
> new law did not expressly change the limitation in
> N.J.S.A. 33:1-10(2b) that only wineries using fruit
> grown in New Jersey could obtain a farm winery
> license, which gives a winery the same direct sales and
> distribution privileges as a plenary winery at reduced
> cost; and
>
> [the new law] provides for the personal importation of
> 12 cases of wine per person per year. Therefore, the
> provision in 33:1-2(a) that restricts a consumer from
> importing more than one gallon of wine at a time
> without a special permit contradicts P.L. 2011, c.
> 20[7], [and] has been implicitly repealed. Similarly, to
> the extent that the provision in N.J.S.A. 33:1-2(a)
> prohibiting a consumer from importing wine from a
> non-reciprocal state contradicts P.L. 2011, c. 20[7], it
> has also been implicitly repealed.

(State App. 60-61). The parties further agreed that "the intent of the New Jersey

Legislature was to extend coverage to both in-state and out-of-state wineries

equally," and portions of N.J. Stat. Ann. § 33:1-10(2b) were stricken

accordingly, to give the same opportunities to wineries regardless of the origin

of their fruit. Id. Thus, the parties agreed that the Legislature resolved, either

implicitly or explicitly, all of the issues on remand, except for the issue of the

source of grapes in N.J. Stat. Ann. § 33:1-10(2b), an oversight the parties agreed was unintentional and remedied in the Consent Order.

After the entry of the Consent Order, Appellees moved for fees and costs pursuant to 42 U.S.C. § 1988(b) in the amount of $822,089, which the State opposed, and the District Court granted in the amount of $802,221, denying only $19,868 of the request. The District Court made this slight reduction by awarding 50.34 hours of compensation for writing the Reply to the motion for fees and costs instead of the requested 72.6 hours (State App. 37); and by reducing a "blended rate" for local counsel from a requested $325 per hour -- more than "the two attorneys who billed approximately 90% of the [162] hours at issue charged [clients]" --to $285 per hour (State App. 48).

Importantly for this appeal, the District Court granted the request for appellate fees that this Court had denied, and compensated Plaintiffs' counsel for time spent on behalf of unsuccessful clients (both non-prevailing parties and non-parties), and for significant time spent litigating unsuccessful claims.

## STANDARD OF REVIEW

This Court exercises plenary review "in considering whether the District Court applied the proper legal standards in determining the fee award." McKenna v. City of Phila., 582 F.3d 447, 455 (3d Cir. 2009).  Review is also plenary with respect to the district court's award of attorney's fees for services on appeal that this court had denied.  Yaron v. Twp. of Northampton, 963 F.2d 33, 35-36 (3d Cir. 1992).

This Court generally reviews the reasonableness of fee awards for abuse of discretion and "will conclude that there has been an abuse of discretion if a reasonable person could not have adopted the District Court's view of the appropriate amount of an award." McKenna, 582 F.3d at 455.  However, "[i]f the district court uses improper legal standards or procedures to decide a fee issue, an abuse of discretion occurs automatically, which is merely another way of saying that our review becomes plenary.  Thus, to the extent the district court used incorrect legal standards or focused on improper considerations, [this Court] will review its decision under a *de novo* standard." Hanover Potato Products, Inc. v. Shalala, 989 F.2d 123, 127 (3d Cir. 1993).

15

## SUMMARY OF ARGUMENT

The District Court's award of attorneys' fees must be substantially reduced because the District Court unlawfully considered and granted appellate fees and costs previously rejected by this Court, failed to reduce the fees and costs incurred to account for years spent litigating an unsuccessful claim, and awarded unwarranted fees and costs for non-prevailing parties.

First, pursuant to <u>Yaron</u>, 963 F.2d 33, the District Court lacked authority to entertain, let alone grant, a request for appellate fees that this Court had already denied three times. This Court's "review is plenary with respect to the district court's award of attorney's fees on appeal because that issue concerns the district court's ability to award any attorney's fees for services on appeal." <u>Id.</u> at 35-36.

Second, the District Court failed to apply <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 440 (1983), to eliminate compensation for unsuccessful claims. In so doing, the District Court improperly considered time spent on the litigation before the successful claims had been asserted in the case and failed to reduce the fees substantially for lack of success once other claims were added. Because years elapsed with the unsuccessful direct shipment claim as the only issue in

this case, that failure to substantially reduce counsels' fees was patently unreasonable.

Third, the District Court incorrectly held that fees for time spent on work for unsuccessful parties and non-parties was compensable, in violation of 42 U.S.C. § 1988(b) and <u>Venegas v. Mitchell</u>, 495 U.S. 82, 87 (1990), which affirms that fees are awarded to prevailing parties rather than to their attorneys. The District Court's determination that some parties prevailed was irrelevant to the decision to award fees to those who clearly did not because they were voluntarily dismissed from the case or denied leave to intervene. In addition, the District Court should have exercised its discretion to reduce the fees and costs incurred by Appellant Hansel Winery, who disclaimed any interest in the litigation and attempted to exit the case at the eleventh hour.

# **ARGUMENT**

I.    <u>Because The District Court Lacked Authority To Grant Fees This
      Court Had Denied, The Fee Award Must Be Reduced By $191,170.</u>

This Court must vacate the award of appellate fees it denied before the

District Court improperly granted them below.  This Court unequivocally held in

<u>Yaron</u>, 963 F.2d at 37, that when it denies a motion for fees on appeal pursuant

to 42 U.S.C. § 1988(b), a district court has no power to overrule that appellate

decision.    Furthermore, when this Court wishes a matter it has not considered

to be heard below, it remands the matter.  But that is not what happened here

with the motion for appellate fees and costs related to the prior appeal.  Because

<u>Yaron</u> is squarely on point, the District Court should not have ignored its

proscription against awarding appellate fees this Court has denied, and the

judgment should be reduced by $186,136 for fees and costs related to the prior

appeal in this matter, plus $5034 unnecessarily spent litigating this issue below.[4]

In 2010, this Court held that the State's ban on the direct shipment of

wine    was    constitutional,    but    that    other    statutory    provisions    were

_____

[4] Allowing this portion of the District Court's judgment to stand would permit
appeals of fee petitions to be taken from the Third Circuit to the district courts,
and would contravene the hierarchy of the federal system of judicial review.
<u>See, e.g.</u>, 28 U.S.C. § 1254 (decisions of courts of appeals reviewable by U.S.
Supreme Court).

18

unconstitutional, and remanded this case to the District Court for "a determination of the appropriate remedy." Freeman v. Corzine, 629 F.3d at 164. Thereafter, this Court unquestionably denied Appellees' three requests for fees incurred in the appeal. First, on June 30, 2011, this Court issued an Order denying the request for $186,136 in fees, and noted that the late District Judge Pollak, who was then hearing the case by designation, would have granted the request. (State App. 52). Second, on July 6, 2011, this Court filed an Amended Order denying Appellees' request for fees and costs related to the appeal, and appended a written dissent by Judge Pollak, who assumed the majority did not find Appellees to be prevailing parties entitled to fees. (State App. 54, 55). Appellees then filed a request for rehearing *en banc* on their request for fees, which this Court rejected. (August 16, 2011 Order denying "Sur Petition for Panel Rehearing with Suggestion of Rehearing *En Banc*."). (State App. 57). At no time did this Court remand the issue of appellate fees to the District Court along with the rest of the case. Instead, it expressly and repeatedly denied the request. Pursuant to Yaron, 963 F.2d 33, the District Court, therefore, had no authority to entertain Appellees' request for those appellate fees.

Yet Appellees asked for those fees when the matter was remanded for a determination of a remedy, and the District Court improperly granted them.

19

(State App. 24-28).   Although Appellees argued below and the District Court accepted that <u>Yaron</u> is distinguishable because that case related to an interim fee request by defendants rather than a final fee request by plaintiffs (State App. 26-27), and therefore was merely "procedural" (<u>id.</u> at 28), <u>Yaron</u> itself permits no such distinction.   Nor does such a distinction make sense because <u>Yaron</u> unequivocally held that a District Court may not even hear a request for appellate fees denied by the Court of Appeals:

> In this Circuit, once this Court has entertained an application for appellate attorney's fees, a district court may not. We reason that an order denying fees on appeal is analogous to a remand with a specific mandate. In such a case, the district court is required to follow our mandate.

963 F.2d at 35.   There is simply no breathing room for permitting the award of appellate fees denied by this Court: a denial of appellate fees under 42 U.S.C. § 1988(b) by this Court mandates the lower courts to also deny them.   The District Court here ignored that mandate.[5]

---

[5]   Similarly, the law-of-the-case doctrine instructs that this Court will not revisit the decision of the prior panel to reject appellate fees and deny rehearing *en banc*.  <u>Todd & Co. v. Securities & Exchange Comm.</u>, 637 F.2d 154, 157 (3d Cir. 1980).  <u>See</u> <u>also</u> <u>Blair v. Scott Specialty Gases</u>, 283 F.3d 595, 610-11 (3d Cir. 2002) ("It is this 'court's tradition that a panel may not overrule or disregard a prior panel decision unless that decision has been overruled by the Supreme Court or by our own court sitting en banc.'").

20

Courts inside and outside the Circuit have consistently interpreted <u>Yaron</u> to prohibit consideration of § 1988(b) appellate fees the Court of Appeals rejected. <u>See, e.g.</u>, <u>Huffman v. Saul Holdings, Ltd. P'ship</u>, 262 F.3d 1128, 1132-33 (10th Cir. 2001) (<u>Yaron</u> restricts authority of district courts to hear motions for appellate fees the Court of Appeals has already heard, under "the mandate rule"). For example, the Eastern District of Pennsylvania describes <u>Yaron</u> as holding that a "district court may award fees for appellate work provided [the] Court of Appeals did not expressly reject [the] fee request." <u>Sklaroff v. Allegheny Health Educ. Research Found.</u>, No. 95-4758, 1998 U.S. Dist. LEXIS 1157 (E.D. Pa. Feb. 2, 1998). The District Court for the Virgin Islands has similarly explained that <u>Yaron</u> precludes district courts from hearing an application for appellate fees pursuant to 42 U.S.C. § 1988(b) previously submitted to the Court of Appeals. <u>Berne Corp. v. Gov't of the V.I.</u>, No. 2000-141, 2010 U.S. Dist. LEXIS 105265, at *19-20 (D.V.I. Sept. 30, 2010). "It is true, as the government argues, that once the Court of Appeals has considered an application for appellate attorneys['] fees, the prevailing party may not resubmit the same application to this Court." <u>Equivest St. Thomas, Inc. v. Virgin Islands</u>, 46 V.I. 447, 459 (D.V.I. 2004). <u>Yaron</u> applies even when the Court of Appeals' denial of attorney fees was without explanation. <u>Yaron</u>, 963 F.2d at 35. Under

21

any of these formulations of <u>Yaron</u>'s holding, the application for appellate fees should not have been heard.

The reasons for the denial – in this case as in <u>Yaron</u> – should have been irrelevant to the District Court because the fact of the denial removed the issue from the purview of the District Court.  As in <u>Yaron</u>, the appellate fees were prohibited and must be vacated:

> [S]ince this Court expressly denied the fee petition at issue, [its] decision did preclude the district court from making any award for work done by defendants' counsel on appeal. Accordingly, that portion of the district court's order awarding defendants counsel fees for services on appeal [must] be vacated.

<u>Id.</u> at 37.

Because the Court of Appeals expressly rejected the fee request here, and the District Court expressly granted it in the amount of $186,136, that amount of the District Court's judgment for Appellees must be vacated.

Further, any time spent litigating the <u>Yaron</u> issue below must also be eliminated from the judgment.  Using page count as a proxy for the proportion of time spent on the issues litigated in the fee petition, 16% of Plaintiffs' Reply in further support of their motion for fees was devoted to this foreclosed issue. As Plaintiffs were compensated for 50.34 hours at $600 per hour for that Reply brief, eliminating the time spent on <u>Yaron</u> amounts to an additional $5034 that

should not have been included in the judgment, for a total of $191,170 improperly awarded pursuant to Yaron.

II.    The Fee Award Must Be Reduced By Approximately $283,000 To Account For Time Spent Unsuccessfully Challenging the Direct Shipment Ban, Which This Court Upheld.

After erroneously awarding more than $186,000 in appellate fees it did not have the authority to even consider, the District Court improperly awarded another approximately $600,000 in fees related to issues and parties that did not prevail, or minimally prevailed, and for inadequately documented expenditures of time.

In so doing, the District Court failed to hold to the well-established principle that in adjudicating a § 1988(b) motion for fees, district courts must attempt to eliminate compensation for time spent on unsuccessful claims. Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782 (1989); Hensley v. Eckerhart, 461 U.S. 424, 440 (1983).

It is beyond dispute that Plaintiffs failed in their challenge to the direct shipment ban, which the District Court separately acknowledged to be the focus of Plaintiffs' case. Freeman, 563 F. Supp. 2d at 496-97 ("Plaintiffs place particular emphasis on what they characterize as New Jersey's discriminatory treatment of out-of-state wineries with respect to direct shipping, which are purchases that are shipped directly to the consumer through a common carrier."). Therefore, the District Court was required to explain whether and

24

how it reduced Plaintiffs' fees and costs to account for lack of success on that primary issue.

Where an unsuccessful claim is distinct from successful claims, it cannot be compensated. Tex. State Teachers Ass'n, 489 U.S. at 789-90.   Where successful and unsuccessful claims are intertwined, District Courts should award only those fees that are reasonable in light of the degree of overall success. Hensley, 461 U.S. at 440.

Although the amount of a prevailing party's fee award is generally within the discretion of the District Court, the Supreme Court requires district courts to eliminate compensation for time wholly spent litigating unsuccessful claims:

> Where the plaintiff's claims are based on different facts and legal theories, and the plaintiff has prevailed on only some of those claims . . . "[t]he congressional intent to limit [fee] awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim."

Tex. State Teachers Ass'n, 489 U.S. at 789-90 (citation omitted).

When time spent on unsuccessful claims is not distinct from time spent on successful claims, "the district courts should exercise their equitable discretion . . . to arrive at a reasonable fee award, either by attempting to identify specific

25

hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff." Id.

Thus, the Supreme Court has mandated either (1) no fee award for time spent on a distinctly unsuccessful claim or (2) a reduced fee award reached by a discretionary elimination of hours or a reduction of the overall award to account for the unsuccessful claim. Here, the District Court failed to do either.

A. The District Court Should Not Have Compensated Plaintiffs For Time Spent On This Litigation Before Any Winning Issues Were Added To It.

Prior to Plaintiffs filing the Second Amended Complaint in July 2006, a challenge to New Jersey's ban on direct shipping was the only issue in the case. Therefore, all litigation in this case prior to July 2006 was distinctly and unequivocally work on an unsuccessful claim that should not be compensated by New Jersey taxpayers. Tex. State Teachers Ass'n, 489 U.S. at 789-90.

Indeed, compensation for that distinct period – three years spent litigating a losing claim – runs afoul of Hensley v. Eckerhart, which provides that a losing, distinct claim should be treated like a separate lawsuit. As the Supreme Court emphasized,

> [t]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U. S. C. § 1988. Where the plaintiff has failed to prevail on a claim that is distinct

26

> in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee.

Hensley, 461 U.S. at 440.  Quite so here, where the Second Amended Complaint created the case anew by challenging a changed statutory scheme (as the direct shipping ban had been amended during the course of the litigation because of the Supreme Court's grant of certiorari in Granholm) and requesting, for the first time, a remedy other than the right to ship wine directly to consumers.[6]

At a minimum, the District Court should have eliminated time spent on this case before Plaintiffs had even pled any successful claim.  Instead, it accepted at face-value counsels' assurance that they had generally reduced their fee request to account for limited success, citing only Plaintiffs' brief and not to the record to so find. (State App. 7-8, 24).  But any purported reduction was inadequate as a matter of law because it did not account for **any** fees incurred during the three-year period of the litigation (July 2003 to July 2006) when the losing issue was the sole issue.  No reasonable person could find that all time spent on this litigation prior to adding successful claims was compensable.

---

[6] Further, pursuant to Buckhannon, 532 U.S. 598, New Jersey's voluntary legislative change to the shipping ban prevents compensation for time spent litigating that issue.

27

The inadequacy of Plaintiffs' voluntary reduction in fees is demonstrated by an attachment to their Reply brief in further support of their motion for fees and costs.  In that brief, Plaintiffs claimed they had reduced their request by "62 hours devoted to the issue on which we did not prevail (direct shipping by common carrier)" related to three litigation activities: (i) drafting the amended complaint in July 2006; (ii) litigating the motion for summary judgment in 2007; and (iii) pursuing the appeal after the summary judgment motions were decided. (State App. 404)  (Tanford Supp. Aff. July 6, 2012, ¶4(d)).  See also (State App. 151) (Pl. Fee Br. at 8) and (State App. 398) (Pl. Fee Reply Br. at 16).  None of those reductions, however, relates to the pre-amendment litigation, when only the losing issue was in the case, and when all time must necessarily have been "devoted to the issue on which [Plaintiffs] did not prevail."  (State App. 404).

While Plaintiffs allegedly did not request compensation for time devoted to the issue on which they did not prevail, counsel and the District Court below unreasonably failed to account for any time prior to July 2006, when all fees and costs must have been incurred on just such work.

Further, the vague records accompanying Plaintiffs' fee request hampered the State's ability to challenge this portion of the request below, as Plaintiffs' motion indicated merely that there had been a reduction in the fee request but

failed to detail how they calculated the reduction or to which submitted billing entries the reductions related until they filed their Reply.  (Id.).  The State simply did not know, when its opposition was due, what litigation tasks, if any, Plaintiffs omitted from their fee request. (State App. 310-11) (State's Dist. Ct. Fee Br. at 33-34).

Appellees claimed, below, and the District Court accepted, that they did not seek compensation for time spent on the direct shipment ban, but the record does not support that representation, as even a cursory look at the dates of counsels' billings show.  Although Appellees' fee request is insufficiently detailed, looking at the Complaint (State App. 65), Amended Complaint (State App. 74), and Second Amended Complaint (State App. 93) reveals that any time spent on this case prior to July 2006 could only have been spent litigating direct shipment.  Because Appellees' motion for attorney's fees and costs included a request for $200,000 incurred prior to July 2006, Plaintiffs' request for fees and costs did not eliminate time spent on that non-compensable losing issue prior to the filing of the second amended complaint.  See Hensley, 461 U.S. at 428 (plaintiffs only sought fees from date of amended complaint because issues on which they prevailed were not pled in initial complaint).  That is, because the issues on which Appellees prevailed were not a subject of this litigation until

July 2006, all fees and costs incurred prior to July 2006 should have been denied. The dates of Plaintiffs' billing records submitted below supports calculating that reduction at $200,000, none of which was accounted for in Plaintiffs' 62-hour reduction for post-2006 litigation activities.

B. <u>Because Plaintiffs Did Not Prevail On A Primary Issue In the Litigation, The District Court Should Have Attempted To Reduce The Judgment Proportionately.</u>

Relatedly, after the 2006 amendment to the Complaint, direct shipment remained the primary issue in the case and the primary remedy sought, so counsel continued to devote significant time to it. Under <u>Hensley</u>, even though this post-2006 time may have been more difficult to distinguish from other time spent on the litigation, that is not a valid basis for awarding a full fee to a party who failed to succeed on such a significant issue. It was unreasonable for the District Court to refuse any attempt to identify the hours spent on this substantial, failing piece of the case, and not to reduce the fees accordingly. At a minimum, this Court should reduce the judgment by 20%, as direct-shipping was one of five issues in the litigation. <u>See</u> <u>Freeman v. Corzine</u>, 629 F.3d at 151 (laying out the five issues). Although a mathematical reduction is not required, where counsel's records are insufficiently detailed to allow the reviewing court to identify distinct claims with precision, an across-the-board reduction in fees is appropriate. <u>McKenna v. City of Phila.</u>, 582 F.3d 447, 458 (3d Cir. 2009).

Unfortunately, counsel's billing records were not consolidated with one another, did not adequately identify which time entries were included in the fee request, and did not indicate to what part of the case the time entries related;

31

therefore it was impossible for the State and the District Court to properly assess excessiveness, redundancies, and necessity.  In such instances, an across-the-board reduction in fees is appropriate.  Id. at 458.

If this Court accepts the arguments above, a further 20% reduction would require reducing the judgment by an additional $83,217; if the Court instead applies a 20% reduction to the whole judgment, then that would require a $160,444.20 reduction.  Either way, 20% is generous as, notwithstanding the problems with the billing records, the State has identified tens of thousands of dollars in unsubstantiated or redundant billings that should not have been compensated but were.

Below, counsel claimed not to be "charging" for certain billed time, without identifying which specific billings were "not charged for."  Moreover, each of the attorneys' billing records were presented in a completely different format.  This made it difficult to adequately review and compare the billings, to identify unnecessary expenditures.

Nevertheless, it is clear counsel were awarded $42,825 for 71.375 hours of phone calls for which they apparently had no contemporaneous time records, as counsel's bills for every call was undated and indicated that the billed time was an estimate, including 450 calls with co-counsel and an estimated ten calls

32

to New Jersey wineries. (State App. 217, 222, 240). In addition, counsel was awarded $46,575 ($600 per hour for 77.625 hours) for reviewing electronic notices, reading news articles, and sending e-mails (no subjects provided) and correspondence (no subjects provided). (State App. 207-11). Such billings were so vague that they merited no compensation and were impossible for the State or the Court to verify as accurate.

At a minimum, because direct shipment was one of five issues in the case after July 2006, the Court should have further reduced the judgment by at least 20% of the post-2006 non-appeal fees and costs request ($416,085), that is by $83,217. In fact, because direct shipment was the primary issue advanced, a 20% discount would be generous to Plaintiffs. The District Court unreasonably failed to reduce the fees and costs requested to account for the fact that this Court clearly held, as Plaintiffs conceded, that they failed to prevail on direct shipment, the focus of their case.[7]

---

[7] If this Court accepts any of the State's legal arguments but determines that the District Court must determine the amount of the reductions to the fee award on remand after a review of the record, then the District Court must have the power to conclude that a greater reduction to the judgment would be required.

III.    <u>Because Fees Are Awarded to Prevailing Parties, Not Counsel, the Judgment Must be Further Reduced by $67,150 Awarded for Non-Prevailing Parties.</u>

Because 42 U.S.C. § 1988(b) only authorizes fees for prevailing parties, and the District Court awarded fees for indisputably non-prevailing parties, the award must be reduced.  "[The U.S.] Supreme Court has consistently reaffirmed its holding that an attorney's fee award under § 1988 belongs to the 'prevailing party' and not his attorney."  <u>Chonko v. Comm'r of SSA</u>, 624 F. Supp. 2d 357, 365 (D.N.J. 2008).  "[B]ecause it is the party, rather than the lawyer, who is so eligible," <u>Venegas v. Mitchell</u>, 495 U.S. 82, 87 (1990), fees cannot be awarded to a lawyer for time spent representing a party who did not prevail merely because the lawyer also represented one who did.

First, in this case, $31,184.15 was inappropriately awarded to counsel for work performed for parties who did not prevail in the litigation because they withdrew from the case or were not permitted to join as plaintiffs.  Despite clear and fundamental precedent, Plaintiffs sought all of the following non-compensable time:

- A losing motion to intervene (State App. 170) and all time spent representing the party who tried to intervene and could not, amounting to at least $18,248 (State App. 170, 212);

34

- All time spent representing a party who admitted no interest in the litigation and therefore sought to be dismissed, amounting to at least $7800 (State App. 213); and

- All time spent representing a party who was voluntarily dismissed from the case during the discovery phase, amounting to at least $2725 for Oliver-specific time, and an undetermined amount of time not itemized. (State App. 200, 210, 214, 217).

Unreasonably, the District Court also granted each of these compensation requests, with no reductions for the parties' lack of success and no acknowledgement that one of the wineries never became a party to the litigation.

On September 20, 2006, Oliver Wine Co., Inc. was dismissed as a plaintiff from this case. (State App. 126). Thereafter, Plaintiffs' counsel sought to dismiss Hansel Winery as a plaintiff and to add Chateau Winery as a plaintiff. (State App. 129). The District Court denied that belated proposed amendment on December 26, 2006. (State App. 133). As Appellants argued below (State App. 307-08), the billings associated with Oliver Winery and the time spent on the attempted substitution of Chateau Thomas Winery for Hansel Winery are not compensable as, under any view, those wineries did not achieve prevailing party

status in this litigation; indeed, they were not even parties to the lawsuit when it resolved.  Accordingly, the District Court's grant of the entry of fees requested for those parties must be eliminated.

An additional $36,000 was inappropriately awarded for work for non-parties, other wineries and wine associations. (State App. 308-09, 379).  It was legal error for the District Court to provide those funds to counsel and the award must accordingly be further reduced by $67,184.15, the total awarded for work on behalf of non-prevailing parties.

The District Court dismissed these arguments as meritless and lacking authority.  (State App. 12, n.1; 34-36).  Yet, the District Court missed the mark because it improperly conflated "Plaintiffs' counsel" with "Plaintiffs" and awarded counsel fees for all time that the District Court deemed to be strategically appropriate to the litigation.  That is not the standard.  The standard is whether the particular client on whose behalf counsel worked "prevailed" as a "party" in the litigation.  If not, no fees can be awarded under 42 U.S.C. § 1988(b).  No special authority is needed; the statute itself provides fees only for prevailing parties.

As this Court has explained, this threshold requirement is especially important when there are multiple plaintiffs:

36

> In a multi-party case, the proper allocation is of critical importance. The District Court must ensure that a partially successful defendant is not required to provide compensation for an attorney's unrelated efforts on behalf of an unsuccessful plaintiff, or in pursuit of the unsuccessful claims of an only partially victorious plaintiff, as section 1988 provides that only a "prevailing party" may be granted a reasonable attorney's fee.

McKenna, 582 F.3d at 457. It was patently unlawful to award fees under 42 U.S.C. § 1988(b) to unsuccessful plaintiffs, and therefore this Court must strike the portions of the award relating to Oliver and Chateau wineries. Finally, given Appellant Hansel Winery's expressed desire to exit the case because it lacked any interest in its outcome, full fees and costs should not have been awarded for time spent representing Hansel.

Further, where fee awards are to be paid from public funds, the district courts must take special care "to ensure that taxpayers are required to reimburse prevailing parties for only those fees and expenses actually needed to achieve the favorable result." Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 975 (D.C. Cir. 2004) (interpreting Equal Access to Justice Act). See also Barrett v. W. Chester Univ., 636 F. Supp. 2d 439, 445-46 (E.D. Pa. 2009) (citing Role Models and denying reconsideration on decision to reduce lodestar by 15% because it would be paid out of public funds). The District Court scoffed at this

essential obligation, failed to parse which parties prevailed, and failed to eliminate hours not connected with any favorable result. The fact that the District Court found meritless the State's objections to counsel's request for full fees incurred in a losing motion to intervene makes patently clear that the court did not seriously consider what it means to be a prevailing party under 42 U.S.C. § 1988(b). (State App. 34-36).

## **CONCLUSION**

For the foregoing reasons, this Court should vacate the Judgment of the District Court, and either order entry of a Judgment in the amount of $260,649.85 or remand for a hearing to determine how much to reduce the judgment.


Respectfully submitted,

JEFFREY S. CHIESA
ATTORNEY GENERAL OF NEW JERSEY

By:_**s/  Lisa D. Kutlin**____
Lisa D. Kutlin
Deputy Attorney General
Attorney for Appellee


Dated: **2/27/13**

## <u>CERTIFICATION OF BAR MEMBERSHIP</u>

I certify that I am a member in good standing of the bar of the United

States Court of Appeals for the Third Circuit.

<u>**s/  Lisa D. Kutlin**_____</u>
Lisa D. Kutlin
Deputy Attorney General

Dated: **2/27/13**

## <u>CERTIFICATION OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32 (a)(7)(C)(i) and L.A.R. 31.1(c), I certify that:

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32 (a)(7) because the brief contains 8,562 words, and thus does not exceed the 14,000-word limit.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32 (a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using a Microsoft Word word-processing program in Times New Roman that is at least 14 points.

3. The text of the brief filed with the Court by electronic filing is identical to the text of the paper copies.

4. This brief complies with L.A.R. 31.1 (c) in that prior to its being electronically mailed to the Court today, it was scanned by the following virus detection software and found to be free from computer viruses:

Company:    Networks Associates Technologies, Inc.

Product:    McAfee VirusScan Enterprise 8.7.0i

Dated: **2/27/13**

**s/ Lisa D. Kutlin**
Lisa D. Kutlin
Deputy Attorney General

41

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on February 27, 2013, I caused the Brief and Appendix for Appellant, Michael Halfacre, Director of New Jersey Division of Alcoholic Beverage Control, to be filed with the Clerk of the United States Court of Appeals for the Third Circuit via electronic filing and by causing an original and nine paper copies of the brief, along with four copies of the appendix, to be sent via postage-prepaid first-class mail.  Counsel for Appellees will receive service via the Court's electronic filing system.


**s/ Lisa D. Kutlin**
Lisa D. Kutlin
Deputy Attorney General

Dated: **2/27/13**