**No. 12-3829**

United States Court of Appeals
For the Third Circuit

---

ROBERT FREEMAN, JUDY FREEMAN, MEYER FRIEDMAN,
BEVERLY FRIEDMAN, WALTER HANSEL WINERY, INC.
*Plaintiffs-Appellees*

vs

DIRECTOR, New Jersey Division of Alcoholic Beverage Control,
*Defendant-Appellant*

---

On appeal from the U.S. District Court for the District of New Jersey
Civ. No. 2:03-cv-03140, Hon. Katherine S. Hayden

---

**BRIEF OF PLAINTIFFS- APPELLEES**
**ROBERT FREEMAN et al.**

---

James A. Tanford
Indiana University
Maurer School of Law
211 South Indiana Avenue
Bloomington, IN    47405
Tel:  812-855-4846
tanford@indiana.edu

Robert D. Epstein
Epstein Cohen Donahoe Mendes
50 S. Meridian St., Suite 505
Indianapolis, IN   46204
Tel:  317-639-1326
Rdpstein@aol.com

Gary S. Redish
Winne, Banta, Hetherington,
Basralian & Kahn P.C.
21 Main Street
Hackensack NJ  07602
tel (201) 487-3800
gredish@winnebantalaw.com

*Attorneys for Plaintiffs-Appellees*

## CORPORATE DISCLOSURE STATEMENT

Plaintiff-Appellee Walter Hansel Winery, Inc., has no parent corporation and no publicly held company owns 10% or more of its stock.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

COUNTER-STATEMENT OF ISSUES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

RELATED CASES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

STANDARD OF REVIEW.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

SUMMARY OF ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARGUMENT:  THE FEE AWARD SHOULD BE AFFIRMED . . . . . . . . . . . 15
BECAUSE THE DISTRICT JUDGE PROPERLY EXERCISED
HER DISCRETION

I.  District Judge Hayden correctly applied the law governing . . . . . . . . . . . . . 15
attorneys' fees

    A.  Judge Hayden followed this circuit's case law on how to . . . . . . . . . . . 15
    determine what constitutes a reasonable attorney's fee using
    the lodestar method

    B.  District Judge Hayden properly determined that time spent . . . . . . . . . 21
    on the appeal was compensable.

II.  None of the New Jersey ABC's arguments for reducing the fee . . . . . . . . . 25
have merit.

    A.  The ABC has waived its argument that fees should not have . . . . . . . . 25
    been awarded for work done before the complaint was amended

    B.  A reduction for "minimal success" is not warranted . . . . . . . . . . . . . . 27

C.  The New Jersey ABC waived the argument that the District . . . . . . . 32
Court should have reduced the award because Oliver Winery was
dismissed as a plaintiff.

D.  All time reasonably related to advancing the litigation as . . . . . . . . . . 34
a whole is compensable, including time spent with nonparties

III.  Other objections by the appellant are incoherent, vague, or . . . . . . . . . . . 36
otherwise not reviewable

IV.  Additional hours spent on this appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

CONCLUSION AND RELIEF SOUGHT. . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME . . . . . . . . . . . . 40
LIMITATIONS

CERTIFICATE OF BAR MEMBERSHIP. . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

CERTIFICATE THAT ELECTRONIC AND PAPER BRIEFS ARE . . . . . . . 41
IDENTICAL

CERTIFICATE OF VIRUS SCAN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

ADDENDUM:  Affidavit of James A. Tanford. . . . . . . . . . . . . . . . . . . . . . . . 43

# TABLE OF AUTHORITIES

*Cases*

Barnes Foundation v. Township of Lower Merion, 242 F.3d 151
(3d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-23

Blanchard v. Bergeron, 489 U.S. 87 (1989) .. . . . . . . . . . . . . . . . . . . . . . . . 37

Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth., 476 U.S.
573  (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human
Res., 532 U.S. 598 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cruz v. Commissioner of Social Sec., 630 F.3d 321 (3d Cir. 2010).  . . . . . . . . 13

Failla v. City of Passaic, 146 F.3d 149 (3d Cir. 1998). . . . . . . . . . . . . . . . . . 38

Family Winemakers v. Jenkins, 1:06-cv-11682 (D. Mass.2011). . . . . . . . . . . 10

Fox v. Vice, 131 S.Ct. 2205 (2011).  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Freeman v. Corzine, 629 F.3d 146 (3d Cir. 2010). . . . . . . . . . . . . . . . . . . . 2, 3, 6

Granholm v. Heald, 544 U.S. 460 (2005) . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 10, 26

Hanrahan v. Hampton, 446 U.S. 754 (1980).. . . . . . . . . . . . . . . . . . . . . . . 18, 24

Hensley v. Eckerhart, 461 U.S. 424 (1983).  . . . . . . . . . . . . 18, 21, 24, 27, 28, 31

Holland v. N.J. Dep't of Corr., 246 F.3d 267 (3d Cir.2001).. . . . . . . . . . . . . . 23

Hughes v. Rowe, 449 U.S. 5 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Jama v. Esmor Correctional Services, Inc., 577 F.3d 169
(3d Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14, 18, 31

Jelovsek v. Bredesen, 545 F.3d 431 (6th Cir. 2008).. . . . . . . . . . . . . . . . . . . 32

Maldonado v. Houstoun, 256 F.3d 181 (3d Cir. 2001).. . . . . . . . . . 19, 21, 26, 35

McDonald v. McCarthy, 966 F.2d 112 (3d Cir. 1992), . . . . . . . . . . . . . . . . . . 24

McKenna v. City of Philadelphia, 582 F.3d 447
  (3d Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 18, 19, 20, 29, 33-34

P. Mastrippolito & Sons, Inc. v. Joseph, 692 F.2d 1384 (3d Cir 1982) . . . . . . 23

Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546
  (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

People Against Police Violence v. City of Pittsburgh, 520 F.3d 226
  (3d Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 28

Perdue v. Kenny A., 559 U.S. 542, 130 S.Ct. 1662 (2010) . . . . . . . . . . . . . . . 23

Planned Parenthood of Central N.J. v. Attorney General, 297 F.3d
  253 (3d Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 26, 35, 38

Rode v. Dellarciprete, 892 F.2d 1177, 1188-89 (3d Cir. 1990) .. . . . . . 26, 33, 37

Simmons v. City of Phila., 947 F.2d 1042 (3d Cir. 1991). . . . . . . . . . . . . . . . 34

Singer Mgmt. Consultants v. Milgram, 650 F.3d 223 (3d Cir. 2011). . . . . . . . 18

Smith v. Philadelphia Housing Auth., 107 F.3d 223 (3d Cir. 1997). . . 20, 26, 33

Southwestern Pa. Growth Alliance v. Browner, 121 F.3d 106
  (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 36

Soyka v. Alldredge, 481 F.2d 303 (3d Cir. 1973).. . . . . . . . . . . . . . . . . . . . . . 22

Taylor v. U.S., 815 F.2d 249 (3d Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Tenafly Eruv Ass'n v. Borough of Tenafly, 195 Fed. Apx. 93 (3d Cir. 2006).. . 9

U.S. v. Ferri, 686 F.2d 147 (3d Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

U.S. v. Voigt, 89 F.3d 1050 (3rd Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . 22

Venegas v. Mitchell, 495 U.S. 82 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . 33-34

Washington v. Phila. County Ct. of Common Pleas, 89 F.3d 1031
    (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Webb v. City of Philadelphia, 562 F.3d 256 (3d Cir. 2009). . . . . . . . . . . 25, 33

Wooldridge v. Marlene Industries Corp., 898 F.2d 1169 (6th Cir. 1990). . . . . 35

Yakowicz v. Com. of Pa., 683 F.2d 778 (3d Cir. 1982). . . . . . . . . . . . . . . . . 24

Yaron v. Township of Northampton, 963 F.2d 33 (3d Cir. 1992) . . . . . . . . 14, 21

## Constitutions, Statutes and Rules

Commerce Clause, U.S. Const. Art. II, §8. . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 28

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

42 U.S.C. § 1988(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

N.J. Pub. L. 2011, ch. 201 (SB 3172). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

N.J.S.A. § 33:1-11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

N.J.S.A. § 33:1-11.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Local App. R. 108.1 (3d Cir) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## Other

Tenn. Atty. Gen. Opinion 12-59 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Wine Business Monthly  (Feb. 2012), http://www.winebusiness.com/wbm/
?go=getArticleSignIn&dataId=96717. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## COUNTER-STATEMENT OF ISSUES

In this appeal, the New Jersey Division of Alcoholic Beverage Control (ABC) disputes the amount of attorneys' fees awarded to prevailing plaintiff by the district court. The reasonableness of a fee award is reviewed for abuse of discretion. The ABC raises five issues:

1.   Whether District Judge Hayden erred as a matter of law by awarding attorneys' fees for plaintiffs' successful appeal.

2.   Whether Judge Hayden abused her discretion by awarding fees for work done in the early stages of this case prior to filing the amended complaint. This issue is not properly before this court because it was not raised in the district court.

3.   Whether Judge Hayden abused her discretion by not substantially reducing the award because plaintiffs lost one of their five constitutional claims.

4.   Whether a portion of the fees should have been deducted to account for time spent representing Oliver Winery, who withdrew from the case in 2007 and therefore was not personally a prevailing party. This issue is not properly before this court because it was not raised in the district court.

5.   Whether the District Judge committed clear error when she found that hours related to consulting with wineries and wine trade associations who were potential witnesses but not parties to the litigation were reasonably related to the litigation as a whole.

## RELATED CASES

The decision on the merits, which underlies this appeal over attorneys' fees, is *Freeman v. Corzine*, 629 F.3d 146 (3d Cir. 2010).

## STATEMENT OF THE CASE

The New Jersey ABC's two-paragraph statement of the case is inadequate.  It is not sufficiently detailed to allow the court to review whether plaintiffs' attorneys' time was spent on matters related to the litigation as a whole, and it misstates an important part of this court's earlier decision on the merits, confusing direct <u>sales</u> to consumers with post-sale <u>shipments</u> of wine.[1] We therefore provide an expanded statement of the case.

Four wine consumers and one out-of-state winery have sued New Jersey's Director of Alcoholic Beverage Control, alleging that five aspects of the state's ABC laws favored in-state wineries and discriminated against those from out-of-state, in violation of the dormant Commerce Clause:  (1) Instate wineries were allowed to sell directly to consumers on their premises and at up to six other

---

[1]The ABC asserts that when this court decided the merits, it upheld New Jersey's ban on direct "sales" to consumers.  Appellant's Opening Brief at 3.  In fact, this court held exactly the opposite:  "The ABC Law violates this rule by allowing in-state, but not out-of-state, wineries to sell directly to consumers. *Freeman v. Corzine*, 629 F.3d at 159.  We think what the ABC meant to say was that the court upheld the part of the law that banned direct <u>shipments</u> to consumers of mail-order wine. *Id.* at 164.

salesrooms; out-of-state wineries were prohibited from selling directly and could only distribute their wine through the three-tier system using a separate wholesaler.[2] (2) Instate wineries were permitted to sell directly to restaurants and retailers, but out-of-state wineries were prohibited from doing so and had to use a separate wholesaler. (3) Consumers were permitted to transport home an unlimited quantity of wine purchased from an in-state winery, but were prohibited from transporting more than one gallon of wine purchased from an out-of-state winery. (4) Consumers were flatly prohibited from importing wine from any state that did not grant reciprocal personal importation privileges to its citizens. (5) Out-of-state wineries were prohibited from shipping wine directly to consumers by common carrier.[3] The case was brought pursuant to 42 U.S.C. § 1983.

The case was filed in 2003. The primary plaintiffs were wine consumers who wanted to be able to buy wine directly from wineries, and either transport it home themselves, or (ideally) have it shipped. They were joined by out-of-state wineries who wanted to sell wine directly to New Jersey residents. The complaint (App.

---

[2] Under a three-tier system, alcoholic beverages are sold by (1) suppliers and manufacturers to (2) wholesalers, who in turn sell to (3) retailers, who then sell alcohol to consumers. *Freeman v. Corzine*, 629 F.3d at 151.

[3] When plaintiffs filed suit in 2003, the ABC Law allowed in-state wineries to make direct shipments to N.J. consumers, but that privilege was repealed in 2006. At the time the case was heard by the trial court, both in-state and out-of-state wineries were prohibited from using common carriers. That privilege has since been restored by N.J. Pub. L. 2011, ch. 201.

65-73) challenged the constitutionality of ABC laws that treated interstate sales and delivery of wine less favorably than intra-state sales and deliveries, (¶ 29), made out-of-state wineries ineligible for New Jersey winery licenses (¶¶ 27-28), and prohibited them from selling directly to consumers (¶ 2), using parcel delivery services (¶¶ 2, 30) or any other means of delivery (¶¶ 38-40), and restricted personal transportation by consumers. (¶¶ 3, 31). It did not explicitly raise the issue of direct sales to retailers.

In 2004, while this case was pending in the district court, the Supreme Court granted *certiorari* in *Granholm v. Heald*, 544 U.S. 460 (2005) to consider whether states could allow instate, but not out-of-state wineries, to ship directly to consumers. Proceedings in this case were stayed. Dist. Ct. Dkt. No. 26. After the Supreme Court ruled that discriminatory shipping laws of Michigan and New York violated the Commerce Clause,[4] this case was reopened. Dist. Ct. Dkt. No. 31. Three wine wholesalers intervened on the side of the ABC. Dist. Ct. Dkt. No. 50.

The New Jersey legislature then amended its ABC Law to take away the direct shipment privilege from its own wineries, in an apparent effort to moot proceedings in this case. However, the legislature did not amend the other provisions that had been challenged, and the new law still burdened interstate commerce. The district

---

[4]U.S. Const., Art. I, § 8.

court allowed plaintiffs to amend their complaint to conform to the new law, which plaintiffs filed in 2006 (Second Amended Compl, App. 93-101).[5]    The amended complaint raised the same issues as the original complaint, although it made more clear what privileges were being given only to instate wineries (¶20).   One additional issue was added -- that instate but not out-of-state wineries could sell directly to restaurants and retailers (¶¶ 1, 19, 20).  It maintained that the amended law banning direct shipping was still unconstitutional because it had the effect of obstructing the flow of commerce.  (¶35).

In 2007, the parties filed cross-motions for summary judgment on the constitutionality of the challenged provisions in the ABC laws. The New Jersey ABC and Wholesalers also contested plaintiffs' standing to sue.  The District Court held that plaintiffs met the standing requirements and that the challenged provisions were largely constitutional. However, District Judge Hayden struck down the provision giving the privilege to open six retail salesrooms only to instate wineries, and indicated she would also have struck down the personal importation reciprocity rule but that then-director Fischer's statement that he would not enforce this rule rendered the issue moot. Dist. Ct. Dkt. No. 128.  Both sides appealed.

---

[5] A third amended complaint was filed shortly thereafter to remove the attorney general as a defendant, but was otherwise the same. (App. 102-111).

On appeal, the parties briefed and argued six issues: the constitutionality of the ban on direct sales to consumers, the ban on direct sales to retailers, the restriction on personal transportation, the importation reciprocity rule, and the ban on direct shipping, plus whether plaintiffs had standing. In 2010, a panel of this Circuit ruled in plaintiffs' favor on every issue except direct shipping. *Freeman v. Corzine*, 629 F.3d at 153-64. It remanded the case to the district court for a determination of remedy -- whether to eliminate the discrimination against interstate commerce by extending privileges to out-of-state wineries or denying them to instate wineries. *Id.* at 164.

Plaintiffs then petitioned the panel for an interim award of attorneys' fees for the work done on the appeal, believing that 3d Cir. Local R. 108.1 required it.[6] The panel denied the request without an explanation (App. 327-28), did not rule on plaintiffs' motion to clarify its ruling (App. 330-32), and denied rehearing. App. 333-34.

---

[6]LAR 108.1 provides: " Except as otherwise provided by statute, all applications for an award of attorney's fees and other expenses relating to a case filed in this court, regardless of the source of authority for assessment, must be filed within 30 days after the entry of this court's judgment, unless a timely petition for panel rehearing or rehearing en banc has been filed, in which case a request for attorney's fees must be filed within 14 days after the court's disposition of such petition. Such application must be filed with the clerk in the time set forth above whether or not the parties seek further action in the case or further review from any court"

While the remedy issue was pending in the district court, the parties were informed that a bill was going to be introduced in the 2012 session of the New Jersey legislature to amend the affected statutes and extend the benefits of direct sales to out-of-state wineries, so they agreed to a short stay to allow the legislation to progress. A bill was ultimately enacted that corrected one of the problematic statutes but left several others unchanged. N.J. Pub. L. 2011, ch. 201 (SB 3172). Because the legislature had chosen to extend rather than nullify the privilege in one instance, the New Jersey ABC conceded that the proper remedy was to extend the other privileges of direct sales and personal transportation to out-of-state wineries. The court entered a consent order to that effect on April 24, 2012. App. 59-63.

The result has changed the legal landscape of the New Jersey wine market. There are currently more than 7000 wineries in the United States. Wine Business Monthly (Feb. 2012), http://www.winebusiness.com/wbm/?go=getArticleSignIn&dataId=96717 (last checked Apr. 14, 2013). New Jersey wholesalers distribute the products of only 10-15% of them. Statement of Facts ¶¶ 10-12, Summ, Jdmt. Brief, Dist. Ct. Dkt. No. 111. Prior to the entry of the final order, out-of-state wineries could only sell through a wholesaler, so around 6000 wineries were closed out of the New Jersey market altogether and their products unavailable to consumers. As a result of plaintiffs' victory, all wineries may now bypass the wholesalers and sell directly to consumers and retailers. Out-of-state wineries who want to enter the

New Jersey market may open salesrooms and/or sell directly to wine retailers and restaurants. Those who do not still benefit because consumers may now buy wine at their tasting rooms and transport it home or arrange delivery. New Jersey retailers and restaurants that cater to wine enthusiasts benefit because they can now deal directly with wineries and stock a wider array of labels than those selected for bulk distribution by wholesalers. Retailers that serve ethnic populations can obtain specialty wines not previously available, e.g., Kosher wines for the holidays. Consumers can now buy any wine they want directly from the winery or by special order through a retailer, and can expect to see a greater variety of wine on the shelves of retailers and the wine lists of restaurants.

After the final order, plaintiffs filed a motion in the District Court requesting $822,089 in attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b) (App. 140, 400). They provided 140 pages of detailed time records, explanations of the tasks worked on over nine years of litigation, and proof of the prevailing hourly rate in the district for attorneys of similar experience. App. 156-277. The New Jersey ABC argued that the court should award only between $0-34,000. (App.311-12). The district court considered these submissions, characterized the ABC's position as "patently unreasonable," (App. 49), deducted 22 hours,[7] reduced the blended

---

[7]Plaintiffs had requested 72.6 hours for responding to the ABC's objections to the fee request, App. 400, which the court reduced to 50.34 hours. App. 48.

rate of the associate attorneys (App. 48), and then issued a 47-page opinion awarding plaintiffs $802,221 in fees and expenses.  The New Jersey ABC appeals from this award.

## STATEMENT OF FACTS

Plaintiffs' uncontested evidence showed that a  reasonable rate in the district for lead attorneys Epstein, Tanford and Redish was $600 an hour.  All have over 30 years' experience.  Epstein and Tanford have special expertise in wine law issues, having litigated 21 other cases, including *Granholm v. Heald*, 544 U.S. 460 (2005). Epstein Aff. (App. 194-96); Tanford Aff. (App. 157-58). Affidavits from experienced litigators and a survey conducted by the National Law Journal showed that this is within the range of fees normally billed by similarly experienced attorneys in the district. (App. 163-67, 242-47).  Plaintiffs also directed the district court's attention to a recent case that had approved  $600 per hour, *Jama v. Esmor Correctional Services, Inc.*, 577 F.3d 169, 181 (3d Cir. 2009), and a ten-year-old case approving $500-550 an hour.  *Tenafly Eruv Ass'n v. Borough of Tenafly,* 195 Fed. Apx. 93, 97 (3d Cir. 2006) (as of 2002).  For the younger attorneys who assisted on the case, the evidence showed that their actual current billing rates averaged around $325 an hour (which the court reduced to $285).  App. 250.

Plaintiffs' time records showed that they expended 1462 hours of legal work on the case. (Tanford Supp Aff. ¶ 3, App. 403).  They wrote off 154.5 hours -- 70

hours of routine communication among the attorneys to avoid double-billing, Tanford Aff. ¶ 10, 4.7 hours of training time by associates, 18 hours working toward legislation that might have resolved some of the issues, and 62 hours that were devoted exclusively to the direct-shipping issue on which they did not prevail. (Tanford Supp. Aff. ¶ 4, App. 404). Plaintiffs requested compensation for the remaining 1307.5, which had been devoted to research, drafting, fact development, client consultation, motions, and court appearances related to the litigation as a whole.[8]

This was a complicated case involving the 21st Amendment and the Commerce Clause. Much of the development of the case took place before the Supreme Court decided *Granholm v. Heald*, 544 U.S. 460 (2005), when the issue of the balance between these two provisions was undecided. The litigation included three intervening defendants and every aspect of the case was vigorously contested. The litigation has been ongoing for nine years, in the middle of which there were significant changes in both the constitutional law framework and the state ABC laws regulating wineries. The time expended (and the expenses and travel time) were summarized in the following chart, which the district court had before it.

---

[8]For comparison purposes, plaintiffs brought to the court's attention a similar case challenging a Massachusetts restriction on direct wine sales, for plaintiffs requested 4058 hours. *Family Winemakers v. Jenkins,* 1:06-cv-11682 (D.Mass.2011), Opinion at 4-5, App. 182-83.

SUMMARY TABLE OF PLAINTIFFS' ATTORNEYS HOURS

Phase One:  District Court

|  | Tanford | Epstein | Redish | Others | Total |
|---|---|---|---|---|---|
| A  Preliminary research, complaint, case opening docs | 16.3 | 29.0 | 7.9 | 7.5 | 60.7 |
| B. Fact investi- gation, discovery & discovery dispute | 56.2 | 151.7 | 15.5 | 10.4 | 233.8 |
| C.  Motions & hearings | 55.5 | 32.3 | 40.2 | 60.0 | 188.0 |
| D. Summary judgment research, briefs, argument | 81.6 | 49.5 | 19.2 | 33.9 | 184.2 |
| *Less 10% time on direct shipping* | *[-8.2]* | *[-4.9]* | *[-1.9]* | *[-3.4]* | *[-18.4]* |
| E. Misc., e.g. status & P/T conferences, court notices | 22.0 | 27.9 | 27.1 | 47.5 | 124.5 |
| F. Communication among attys and with clients | 1.8 | 138.5 | 4.8 | 1.4 | 146.5 |
| G. Research & amended complaint (direct ship issue)` | 0 [written off] | 0 | 0 | 0 | 0 |
| H. First motion for atty fees | 2.9 | 0 | 0 | 2.6 | 5.5 |
| I. Work on legislation | 0 [written off] | 0 | 0 | 0 | 0 |
| X.  Write-off associate training time |  |  | *[-4.7]* | *[-4.7]* |  |

Phase Two:  Court of Appeals

|  | Tanford | Epstein | Redish | Others | Total |
|---|---|---|---|---|---|
| J.  Misc procedural | 2.5 | 39.4 | 14.6 | 5.9 | 62.4 |
| K. Research & appellate briefs | 100.2 | 28.5 | 9.3 | 1.4 | 139.4 |
| L.  Argument and prep | 23.5 | 14.8 | 18.5 | 0 | 56.8 |
| *Less 14% time on briefs & arg devoted to direct shipping* | *[-17.4]* | *[-6.1]* | *[-3.9]* | *[-0.2]* | *[-27.6]* |
| M. Appellate fee issue | 33.4 | 0 | 2.0 | 0.5 | 35.9 |
| N. Communication with attys, clients | 0 | 27.6 | 0 | 0 | 27.6 |

Phase three:  On Remand

|  | Tanford | Epstein | Redish | Others | Total |
|---|---|---|---|---|---|
| P. Procedure, status report, consent decree | 8.6 | 17.2 | 4.0 | 0 | 29.8 |
| Q. Negotiations with state | 0 | 15.1 | 0 | 0 | 15.1 |
| R. Final fee motion | 7.0 | 3.8 | 0 | 0 | 10.8 |
| S.  Communication with attys, clients | 0 | 36.2 | 1 | 0 | 37.2 |
| TOTAL TIME | 385.9 | 600.5 | 158.3 | 162.8 | **1307.5** |
| Rate: | $600 | $600 | $600 | $325 |  |
| Fee | $231,540 | $360,300 | $94,980 | $52,910 | **$739,730** |
| Travel (x $100) | $3280 | $11950 | $400 | 0 | $15,630 |
| Expenses | $2302 | $16,314 | $4553 | 0 | $23,169 |

**TOTAL:    $778,529**

In addition, plaintiffs requested compensation for 72.6 hours spent responding to the New Jersey ABC's arguments and objections to their fee request. The New Jersey ABC had filed a shotgun opposition, disputing every aspect of the fee request -- from whether plaintiffs were prevailing parties, to the number of hours, and whether a substantial downward adjustment was needed. Many of the ABC's objections were not fully explained, were not accompanied by the citation of authority, and did not demonstrate that any genuine effort had been made to determine if the objection was valid under Third Circuit precedent before asserting it. Plaintiffs' attorneys gave evidence that this made the response especially burdensome. Tanford Supp. Aff. ¶7, App. 406-07. The court awarded 50.54 additional hours, bringing the total award of fees and expenses to $802,221.

## STANDARD OF REVIEW

Fee awards are reviewed for abuse of discretion because of "the trial court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what are essentially factual matters." *McKenna v. City of Philadelphia,* 582 F.3d 447, 455-58 (3d Cir. 2009). An abuse of discretion arises when the district court's decision rests upon an errant conclusion of law, a clearly erroneous finding of fact, an improper application of law to fact, or when no reasonable person would adopt the district court's view. *Cruz v. Commissioner of Social Sec.,* 630 F.3d 321, 324 (3d Cir. 2010). Whether the trial court erred in

applying a legal precept is given plenary review. *McKenna v. City of Philadelphia,* 582 F.3d at 455. A finding of fact is reviewed for whether it is clearly erroneous and "may be reversed on appeal only if it is completely devoid of a credible evidentiary basis or bears no rational relationship to the supporting data." *Jama v. Esmor Correctional Serv.,* 577 F.3d at 180.

## SUMMARY OF ARGUMENT

After nine years of litigation, plaintiffs succeeded in having provisions in New Jersey's alcoholic beverage laws that discriminated against out-of-state wineries declared unconstitutional. The ruling allowed out-of-state wineries to sell directly to consumers and retailers on the same basis as instate wineries. District Judge Hayden awarded plaintiffs $802,221 in attorneys' fees in a careful 47-page opinion. The reasonableness of a fee award is reviewed for abuse of discretion.

Judge Hayden correctly applied the law governing fee awards. She determined that plaintiffs were prevailing parties, used the lodestar method, evaluated plaintiffs' hours to make sure they were not redundant, excessive or unnecessary, determined the appropriate hourly rate based on the evidence supplied, and considered (but rejected) the New Jersey ABC's argument that the award should be adjusted downward. The only issue of law on appeal is whether an obscure case, *Yaron v. Township of Northampton*, 963 F.2d 33 (3d Cir. 1992), precluded the trial court from awarding fees for work done on the appeal because a panel of this

-14-

circuit had earlier issued a cursory denial of a motion for interim fees. Because *Yaron* concerned fee awards to defendants which are governed by quite different standards than awards to plaintiffs, is contrary to all other Third Circuit cases on the strong federal policy of awarding full fees to prevailing plaintiffs, and no other case has been identified in which an unexplained ruling denying interim fees deprived the district court of its authority to award fees for the whole litigation, Judge Hayden correctly included appellate fees in her award.

Under the abuse of discretion standard, if the trial judge correctly follows the law, her decisions as to how many hours were reasonably related to the litigation are entitled to deference as long as they are supported by the record and adequately explained. Judge Hayden's 47-page opinion easily satisfies this standard.

The New Jersey ABC disputes several components of the fee award, but their complaints boil down to a disagreement over the reasonableness of the award, which is a matter vested in the trial court's discretion.

First, the ABC contends that no fees should have been awarded for work done in the three years before the complaint was amended in 2006, because plaintiffs prevailed on the amended complaint, not the original one. This argument has been waived because no authority is cited for it and it was not made in the district court.

Second, the ABC contends that the fee award should have been significantly reduced because plaintiffs did not substantially prevail. The argument

mischaracterizes this court's decision on the merits, which ruled in plaintiffs' favor on five of six issues and upheld their central argument that New Jersey was unconstitutionally giving its instate wineries preferential treatment in its laws regulating licensing, direct sales, and transportation of wine. Plaintiffs lost on one issue -- whether the ban on direct shipping was unconstitutional -- but the cases uniformly hold that no reduction of a fee award is required if all claims involved a common core of facts and related legal theories. Hours devoted <u>exclusively</u> to an unsuccessful claim should be (and were) excluded from the lodestar, but beyond that, plaintiffs who achieve substantial success on some of their claims are entitled to fees for all work reasonably related to the litigation as a whole. Determining what is reasonable is a matter for the trial judge's discretion.

Third, the ABC contends that a portion of the fees should have been deducted to account for time spent representing Oliver Winery, which withdrew from the case in 2007 and therefore was not personally a prevailing party. This argument runs contrary to the usual rule that fees are awarded for all work reasonably related to the litigation as a whole. The ABC has waived the issue, because it neither raised it in the district court nor cited authority for it in its brief.

Fourth, the ABC contends that no fees should have been awarded for some hours related to consulting with wineries and wine trade associations who were not parties to the litigation. Judge Hayden found -- based on the evidence presented --

that these tasks were reasonable efforts to look for witnesses who could provide evidence in support of the case, and therefore reasonably related to the litigation as a whole. The ABC presented no contrary evidence, so Judge Hayden's finding was not clearly erroneous.

## ARGUMENT:
## THE FEE AWARD SHOULD BE AFFIRMED BECAUSE THE DISTRICT JUDGE PROPERLY EXERCISED HER DISCRETION

**I. District Judge Hayden correctly applied the law governing attorneys' fees**

**A. Judge Hayden followed this circuit's case law on how to determine what constitutes a reasonable attorney's fee using the lodestar method**

The legal principles governing the award of attorneys' fees under 42 U.S.C. § 1988(b)[9] are well known.

1. Prevailing parties are normally entitled to reasonable attorney's fees. *McKenna v. City of Philadelphia,* 582 F.3d at 455. Plaintiffs are prevailing parties if they "succeed on any significant issue in litigation which achieves some of the

_____

[9] "In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. § 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction."

benefits the parties sought in bringing suit," *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 232 (3d Cir. 2008) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)), especially issues that vindicate the public interest. *Jama v. Esmor Correctional Serv.,* 577 F.3d at 175-76.  The success must be the result of a judicial decision "either in the trial court or on appeal," *Singer Mgmt. Consultants v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (*quoting Hanrahan v. Hampton,* 446 U.S. 754, 757 (1980)), and not of the voluntary acts of the defendant.  *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res.*, 532 U.S. 598, 604 (2001).  Judge Hayden's opinion applied these principles to the facts of this case and concluded that plaintiffs were prevailing parties because the Court of Appeals had ruled in their favor on four of their five constitutional claims.  Opinion at 4-5, 7-15 (App. 8-9, 11-19).

2.  The determination of a reasonable fee begins with the lodestar method, in which the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563-64 (1986).  Judge Hayden applied the lodestar method to the evidence presented in this case.  Opinion at 5-6, 19-44 (App. 9-10, 23-48).

3.  The number of hours reasonably expended are those actually expended, minus any hours deemed to be excessive, redundant, or otherwise unnecessary. *McKenna v. City of Philadelphia*, 582 F.3d at 455 (quoting *Hensley v. Eckerhart*,

461 U.S. at 433). Judge Hayden followed this standard and devoted the bulk of her opinion to a careful analysis of the reasonableness of the hours claimed and the objections made by the defendants.[10]  Opinion at 6, 19-33  (App. 10, 23-37).  She found that the time records were sufficiently detailed for the court to know what activities the plaintiffs' attorneys were working on and how those activities related to the litigation. Opinion at 24-28 (App. 28-32).   She found no additional unnecessary duplication of effort among plaintiffs' attorneys beyond the time they self-deducted.  Opinion at 28-29  (App. 32-33).  She looked carefully at the hours objected to by the New Jersey ABC, and determined which hours were reasonably related to the litigation as a whole.  Opinion at 30-32 (App. 34-36).

   4.  A reasonable hourly rate is the prevailing market rate in the district for similar services by lawyers of equivalent skill and experience.  *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001).  The determination of the hourly rate is a question of fact for the district court based on evidence presented.  *McKenna v. City of Philadelphia*, 582 F.3d at 455. Judge Hayden followed this principle and awarded lead counsel $600 per hour based on plaintiffs' uncontested evidence of prevailing market rates, see Statement of Facts, *supra* at 9; after considering the

---

[10] The defendant has the burden to challenge the reasonableness of the time requested, and the District Court should not decrease a fee award based on factors not raised by the adverse party. *McKenna v. City of Philadelphia,* 582 F.3d at 459.

level of skill and experience of plaintiffs' attorneys.  Opinion at 6, 33-44 (App. 10, 37-48).  The New Jersey ABC presented no contrary evidence, and the general rule is that if the defendant does not contest the rate with record evidence, "the plaintiff must be awarded attorneys's fees at her requested rate."  *Smith v. Philadelphia Housing Auth.*, 107 F.3d 223, 225 (3d Cir. 1997).

   5.  Degree of success is important in determining a reasonable fee and in many cases, the plaintiffs will not win every claim made.  The court may consider the fact that plaintiffs did not prevail on all claims at two stages in the fee process. First, hours devoted exclusively to an unsuccessful claim should be excluded from the initial calculation of the lodestar if they can be separately identified and distinguished from time spent on the litigation as a whole.  *McKenna v. City of Philadelphia,* 582 F.3d at 457-58.  Judge Hayden cited this rule, Opinion at 6 (App. 10), and made sure all such hours were excluded.  Opinion at 20 (App. 24). Second, after calculating the lodestar, the District Court has discretion to adjust it downward if plaintiffs achieved only modest overall success.  However, where the successful and unsuccessful claims are based on a common core of facts and related legal theories, plaintiffs are entitled to full compensation.  *McKenna v. City of Philadelphia,* 582 F.3d at 457-58.  Judge Hayden followed these guidelines and declined to reduce the lodestar for limited success, rejecting the New Jersey ABC's argument that the issue on which plaintiffs lost (direct shipping) was distinct from

the four issues on which they won (direct sales and personal transportation). Opinion at 6, 44-46 (App. 10, 48-50).

6.  To enable meaningful review, the District Court must clearly explain the reasons for its decisions. *Planned Parenthood of Central N.J. v. Attorney General*, 297 F.3d 253, 266 (3d Cir. 2003).  Judge Hayden did so, in a 47-page unpublished opinion carefully explaining her decision (App. 5-51).

## B. District Judge Hayden properly determined that time spent on the appeal was compensable.

The New Jersey ABC argues that Judge Hayden made one important legal error.  The ABC contends that *Yaron v. Township of Northampton*, 963 F.2d 33 (3d Cir. 1992) should have precluded the trial court from awarding fees for 322 hours of work done on plaintiffs' successful appeal. (Appellant's Opening Brief 18-23). The argument is implausible on its face, because every case decided by the Third Circuit and Supreme Court in the past 35 years holds to the contrary -- prevailing plaintiffs are entitled to "all hours reasonably expended on the litigation," including the appeal. *E.g., Hensley v. Eckerhart*, 461 U.S. at 435; *Maldonado v. Houstoun*, 256 F.3d at 185; *Planned Parenthood of Cent. N.J. v. Attorney Gen. of N.J.,* 297 F.3d at 269-70.  The ABC argues, however, that *Yaron* creates an unusual exception to the general rule -- that if a panel of this court denies a motion for *interim* fees, before the extent of plaintiff's ultimate success is known, the District

-21-

Court is deprived of jurisdiction to consider appellate fees in its final award, even when the panel's cursory ruling does not say so.

The ABC cites no authority for this argument other than *Yaron,* which is not germane. *Yaron* concerned a <u>defense</u> request for fees, which is governed by an entirely separate body of law from requests by prevailing plaintiffs in civil rights cases. *Yaron* said nothing about whether the unexplained denial of an interim fee request by <u>plaintiffs</u> would preclude the district court from considering such fees at the end of the case, because no such issue was presented. Prior cases are not precedent as to issues that were not ruled upon. *Soyka v. Alldredge*, 481 F.2d 303, 306 (3d Cir. 1973).

*Yaron* is neither direct precedent nor indirect authority for the ABC's position. This Circuit holds that the reasoning in one case is not authority in another unless the laws at issue in the two cases are analogous. *U.S. v. Voigt*, 89 F.3d 1050, 1083 (3rd Cir. 1996). The laws governing fee awards to defendants and plaintiffs are not analogous, but are "different ..., reflecting the 'quite different equitable considerations' at stake." *Fox v. Vice*, 131 S.Ct. 2205, 2213 (2011). There is a federal policy "of highest priority" that prevailing plaintiffs are entitled to full attorney's fees, but no such policy favoring awards to defendants. *Id.* Fee awards to successful plaintiffs are mandatory absent unusual circumstance, while awards to defendants are prohibited absent unusual circumstances. *Barnes Foundation v.*

*Township of Lower Merion*, 242 F.3d 151, 157-58 (3d Cir. 2001). Courts may not deny fee awards to plaintiffs without a full explanation, *Perdue v. Kenny A.*, 559 U.S. 542, ___, 130 S.Ct. 1662, 1676 (2010) (explanation "essential"), but no explanation is required to deny a defense award. *See Hughes v. Rowe*, 449 U.S. 5, 7 nn.1-2 (1980); *P. Mastrippolito & Sons, Inc. v. Joseph*, 692 F.2d 1384 (3d Cir 1982) (both reviewing unexplained order on defense fees without suggesting that an explanation was required). Interpreting *Yaron* as applying to plaintiffs and denying them fees for a successful appeal would conflict with this uniform body of law, and this Circuit holds that individual decisions are not to be interpreted in a way that would put them at odds with prevailing case law. *Holland v. N.J. Dep't of Corr.*, 246 F.3d 267, 278 n. 8 (3d Cir.2001).

The New Jersey ABC also argues for the existence of a broad overriding principle that once a panel of this Court has decided an issue, even if the decision is only a cursory ruling on a motion, its decision constitutes a "mandate" or "law of the case" that forever precludes the district court from considering any issue raised in the motion. The cases hold to the contrary:

> We decline to infer rejection of [a claim] in the absence of some judicial statement that the contention has been considered and rejected. [A] summary denial of [a] petition cannot be viewed as a determination, sufficient to trigger law of the case consequences..."

*U.S. v. Ferri*, 686 F.2d 147, 157 (3d Cir. 1982). This is especially true in the

situation we face -- where the unexplained ruling is inconsistent with case law but does not say why the court is reaching a contrary result, *see McDonald v. McCarthy*, 966 F.2d 112, 115-18 (3d Cir. 1992), and where the prior decision was probably procedural (e.g., the petition was premature) rather than on the merits. *Taylor v. U.S.*, 815 F.2d 249, 252 (3d Cir. 1987). Procedural denials are not considered final. *Yakowicz v. Com. of Pa.*, 683 F.2d 778, 782 (3d Cir. 1982). The only explanation for the panel's decision to deny interim fees that is consistent with the other rulings of this Circuit on attorneys' fees is that the motion was being denied as premature because the full extent of plaintiffs' success would not be known until after the district court on remand decided whether to extend direct-sale rights to out-of-state wineries or take privileges away from instate wineries. Since the level of a plaintiff's ultimate success is "crucial" in determining the amount of fees to be awarded, *Hensley v. Eckerhart*, 461 U.S. at 434, 438-40, it would have been difficult for the court of appeals to determine an appropriate award at the time the motion was made. See *Hanrahan v. Hampton*, 446 U.S. at 758-59 (interim fees disfavored if final outcome in doubt). Even if this Court were to rule that the District Court should not have decided the question of appellate fees, but should have deferred that decision to this Court, the error would be harmless because both courts applying the same law and relying on the district court's fact-finding as to hourly rate and a reasonable number of hours, would reach the same result under

the lodestar method.

## II. None of the New Jersey ABC's arguments for reducing the fee have merit

## A. The ABC has waived its argument that fees should not have been awarded for work done before the complaint was amended

The New Jersey ABC contends that the district court erred by awarding fees for work done before the complaint was amended in 2006,[11] because plaintiffs prevailed only on the amended complaint. The ABC argues that the first three years of litigation "should be treated like a separate lawsuit." Appellant's Opening Brief at 26-30. The ABC has waived this issue. They cite no authority for it and did not raise it in the district court. See Appellant's Opening Brief at 2 (no citation to any place in the record where the issue was raised). The only objection the ABC made below concerning time prior to 2006 was to 30 hours plus travel time in 2003 before the first complaint was filed. State Mem. in Opposition at 30-31 (App. 307-08). See District Court's Opinion at 30 (App. 34) (discussing the matter).

Courts of appeals will not usually entertain an argument that was not presented in the district court. To do so is unfair to the opposing party who may not have developed the record on that issue. *Webb v. City of Philadelphia*, 562 F.3d 256, 263 (3d Cir. 2009). *See also* 3d Cir. Local Rule 28.1(a)(1) (appellant must set forth in his brief a citation to the place in the record below where he raised the

---

[11]They refer to the Second Amended Complaint, App. 93 et seq.

issue).  This waiver rule applies to disputes over attorneys' fees.  *See Smith v. Phila. Housing Auth.*, 107 F.3d at 225 n.2 (panel would not consider a new argument against the hourly rate that was not presented below); *Rode v. Dellarciprete*, 892 F.2d 1177, 1188-89 (3d Cir. 1990) (court of appeals will not consider an objection not asserted below because plaintiffs not on notice they had to defend a specific aspect of the fee request).

The argument is without merit in any event.  Plaintiffs are entitled to be compensated for all hours related to the litigation as a whole, not just hours expended after an amended complaint is filed.  *Planned Parenthood of Central N.J. v. Attorney General*, 297 F.3d at 266; *Maldonado v. Houstoun*, 256 F.3d at 184. The ABC's "separate lawsuit" argument rests upon a false characterization of the first complaint as raising only the direct shipping issue and therefore being entirely distinct from the issues raised in the amended complaint.  Although much of the first complaint was devoted to direct shipping,[12] other issues on which plaintiffs ultimately prevailed were also raised -- direct sales, personal transportation,

---

[12]At the time the complaint was filed, the relationship between state liquor laws and the commerce clause was an unexplored area of law.  The goal was to establish precedent that the Commerce Clause prohibited protectionist state liquor laws.  Discriminatory direct shipping rules were an obvious form of direct economic benefit to local wineries and had been the subject of an FTC study that criticized local protectionist laws, so direct shipping was the focal point -- though not the exclusive focus -- of many of the early cases on protectionist state wine laws.  See, e.g., *Granholm v. Heald*, 544 U.S. 460 (2005).

discriminatory licensing laws, and delivery of wine generally. See Statement of the

Case, supra at 3-4.   They key paragraphs of the complaint provide:

> 28.  Out-of-state wineries are not eligible for New Jersey plenary
> or farm winery licenses.
>
> 29.  New Jersey Alcoholic Beverage Law treats interstate sales and
> delivery of wine to adults differently from intra-state sales and
> delivery, reserves to in-state wineries and retailers the exclusive
> market in wine, and provides a direct economic advantage to in-
> state wine businesses, all in violation of the Commerce Clause of
> the United States Constitution.

(App. 70). The fact that plaintiffs cannot predict exactly how a case will develop

when they draft the first complaint has never been a barrier to a fee award where

they achieve substantial success.  *See Hensley v. Eckerhart*, 461 U.S. at 435.

**B.  A reduction for "minimal success" is not warranted**

The New Jersey ABC's second objection is that the fee award should have been

significantly reduced because plaintiffs did not substantially prevail.  Appellant's

Opening Brief at 24-33.  The argument is implausible on its face, since plaintiffs

won on five of the six issues litigated in this Court.  Mixed results are common in

civil rights cases, and it is not ground for a substantial fee reduction that plaintiffs

lost on one claim. "Litigants in good faith may raise alternative legal grounds for

a desired outcome, and the court's rejection of or failure to reach certain grounds

is not a sufficient reason for reducing a fee."  *Hensley v. Eckerhart,* 461 U.S. at

435.  If claims "involve a common core of facts and [are] based on related legal

theories," all of counsel's time "devoted generally to the litigation as a whole" is fully recoverable. *Id.* Plaintiffs who "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit" are entitled to full attorney's fees, *People Against Police Violence v. City of Pittsburgh*, 520 F.3d at 232.

The New Jersey ABC contends that this case has always been exclusively or primarily about whether the ban on direct shipping violated the Commerce Clause, U.S. Const., Art. I, § 8, the issue on which plaintiffs lost, so the fee award should have been substantially reduced. Appellant's Opening Brief at 24. Judge Hayden, who presided over all nine years of this litigation, rejected this argument as a mischaracterization. Opinion at 18-19, App. 22-23. The central focus was the claim that state laws giving advantages to in-state wineries and discriminating against out-of-state wineries violated the Commerce Clause. This claim was vindicated when this Court struck down four of the five laws alleged to be discriminatory.

Hours devoted to litigating an unsuccessful claim should be excluded from the initial calculation of the lodestar only if the claim is "distinct in all respects from [the] successful claims," *Hensley v. Eckerhart*, 461 U.S. at 440, and the hours can be separately identified and distinguished from time spent on the litigation as a whole. No deduction is required if the successful and unsuccessful claims are

based on a common core of facts and related legal theories, as in this case. *McKenna v. City of Philadelphia,* 582 F.3d at 457-58.    The New Jersey ABC makes no argument that the direct shipping issue was distinct from the litigation as a whole, and such an argument would be unavailing. The central focus of the litigation was the constitutionality of New Jersey's ABC laws that discriminated against out-of-state wineries and gave instate wine sellers preferential access to the market through its licensing, sales, delivery and transportation  laws.  All issues depended on a common set of facts showing how the laws harmed interstate commerce by raising costs for out-of-state wineries, reducing the number of out-of-state wines available, closing the market to many smaller out-of-state wineries, and giving in-state wineries a competitive advantage by allowing them to bypass the wholesale distribution system.

All issues also arose under a common legal theory -- that they discriminated against interstate commerce.  Plaintiffs prevailed on four claims that licensing and transportation provisions were discriminatory on their face, and lost on one claim that the direct shipping ban was discriminatory in effect, but these are not distinct legal theories.  The Supreme Court has explained:

> When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry.  When, however, a statute has only indirect effects on interstate commerce and regulates

> evenhandedly, we have examined whether the State's interest is
> legitimate and whether the burden on interstate commerce clearly
> exceeds the local benefits. *We have also recognized that there is
> no clear line separating the[se] categor[ies.]... In either situation
> the critical consideration is the overall effect of the statute on both
> local and interstate activity.*

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579

(1986) (emphasis added).

Despite the fact that direct shipping was not a distinct claim, plaintiffs reduced

their fee request anyway by 62 hours that could be identified as spent exclusively

on developing the argument that the post-2006 direct shipping ban had a

discriminatory effect. This extra time would not have been needed but for the

direct shipping issue, since the other four issues could be resolved as direct

discrimination. See Tanford Supp. Aff. ¶ 4. (App. 404). Judge Hayden found that

this was a reasonable exercise of billing judgment. The New Jersey ABC brought

no other hours to Judge Hayden's attention that were devoted exclusively to the

issue, State Mem. in Opposition 30-34 (App. 307-309 ), so it is impossible to say

that she abused her discretion.

In lieu of identifying specific unnecessary hours, the New Jersey ABC contends

the trial judge should have made a 20% downward adjustment in the fee award to

reflect the fact that plaintiffs lost one of five issues.[13]  Appellant's Opening Brief

—————————————

[13] Plaintiffs actually won five of six issues. The ABC did not mention the
fight over standing. See Statement of the Case, supra at 6.

at 31-33.  They cite no authority to support such a mathematical approach, and the law is to the contrary.  Use of a mathematical approach has been explicitly rejected by the Supreme Court.  *Hensley v. Eckerhart,* 461 U.S. at 435 n.11 ("We ... reject[] a mathematical approach comparing the total number of issues in the case with those actually prevailed upon.  Such a ration provides little aid in determining what is a reasonable fee...").

The district court has discretion to reduce the lodestar if plaintiffs did not achieve substantial overall success, but the guidelines for the exercise of that discretion have nothing to do with counting up the individual claims won and lost.  The court is to look primarily at the results achieved, not only for the plaintiffs, but also whether the legal issue was significant and the litigation served a public purpose.  *Jama v. Esmor Correctional Serv.*, 577 F.3d at 176.  Judge Hayden did exactly that, noting that the results in this case "significantly overhauled" the legal landscape, Opinion at 14, 18 (App. 18, 22), by striking down residency requirements in the winery licensing laws that were restricting out-of-state wineries from selling directly to consumers, restaurants and retailers, opening the New Jersey market to hundreds of out-of-state wineries, allowing wine tourists to bring wine home from California, and expanding the variety of wines available at restaurants and retailers.  The case set new Third Circuit precedents that residency requirements and reciprocity rules in liquor laws are invalid despite the general

regulatory power given to states by the 21st Amendment, and casts into doubt the validity of other laws such as N.J.S.A. § 33:1-11(a, 2b) (requiring wholesaler to maintain warehouse in the state) and § 33:1-11.3 (only distributors in reciprocal states may sell to retailers). See, e.g., Tenn. Atty. Gen. Opinion 12-59 (2012) (citing a similar 6th Circuit case, *Jelovsek v. Bredesen*, 545 F.3d 431 (6th Cir. 2008), as settling the question that residency requirements in other liquor laws are unconstitutional). Judge Hayden was well within her discretion to determine that plaintiffs achieved substantial success and were entitled to a fully compensatory fee.

## C. The New Jersey ABC has waived the argument that fees should have been reduced because Oliver Winery was dismissed as a plaintiff.

The New Jersey ABC's third objection is that no fees should have been awarded for time spent representing Oliver Winery. Oliver Winery was a plaintiff from 2003 until 2006, when it withdrew (with the state's consent) because wholesalers with whom it did business intervened as defendants. Dist. Ct. Docket No. 83. The ABC contends that because it withdrew from the litigation, Oliver Winery did not personally prevail, so some proportion of the fee award must be reduced to account for the time spent representing it. Appellant's Opening Brief at 34-38. Although the section is not entirely clear, the ABC seems to be making a proportionality argument -- that prevailing party status in a multi-plaintiff case

is measured client by client, as if the lawyers brought a separate lawsuit for each plaintiff and divided their time equally among these several cases.

The ABC did not make this argument in the district court and cites to no place in the record where the issue was raised. Appellant's Opening Brief at 3. The only objection to billing entries related to Oliver Winery that was made below was that the hours associated with it were not reasonably related to the litigation as a whole. State Mem. in Opposition at 26, 30-31 (App. 303, 307-08). The District Court found to the contrary. Opinion at 30-31 (App. 34-35). Failure to present an issue to the district court is a waiver except in extraordinary circumstances. *Webb v. City of Philadelphia*, 562 F.3d at 263. *See also* 3d Cir. Local R. 28.1(a)(1) (appellant must cite to the place in the record where he raised the issue). This principle applies with particular force in disputes over attorneys' fees because of the broad discretion given to the district judge. *See Smith v. Phila. Housing Auth.*, 107 F.3d at 225 n.2 (panel would not consider a new argument against the hourly rate that was not presented below); *Rode v. Dellarciprete*, 892 F.2d at 1188-89 (court of appeals will not consider an objection not asserted below because plaintiff not on notice he had to defend a specific aspect of the fee request).

There is another reason why the issue should be deemed waived. The ABC cites no authority for it. The only citations are to *Venegas v. Mitchell*, 495 U.S. 82, 87 (1990), and *McKenna v. City of Philadelphia,* 582 F.3d at 457, neither of which

says anything about whether there must be some kind of mandatory deduction if one co-plaintiff is dismissed from the case. *Venegas* concerned whether the lodestar method of calculating a reasonable fee vitiated a private contingency fee agreement between lawyer and client. *McKenna* concerned how the responsibility to pay fees is to be allocated among defendants. Arguments not supported by the citation of authority are usually deemed waived. See *Southwestern Pa. Growth Alliance v. Browner*, 121 F.3d 106, 122 (3d Cir. 1997); *Simmons v. City of Phila.*, 947 F.2d 1042, 1065 (3d Cir. 1991).

## D. All time reasonably related to advancing the litigation as a whole is compensable, including time spent with nonparties

The New Jersey ABC's fourth objection is that no fees should have been awarded for time spent conferring with wineries and trade associations who were not plaintiffs. Two activities are mentioned:

1. Time spent attempting to substitute Chateau Thomas Winery for Hansel Winery as a plaintiff. No specific hours are identified. (Appellant's Opening Brief at 35-36).

2. Time spent communicating with other wineries and wine trade associations who were not parties. No specific hours are identified. (Appellant's Opening Brief at 36).

The ABC makes no coherent argument why any of this time should be

excluded and does not develop these arguments beyond making a conclusory statement that the district court should not have awarded them.  The ABC cites no authority that any of these hours are to be treated differently from any other hours requested by plaintiffs.  The District Judge must examine them, in light of the objections and in light of her knowledge about the litigation generally, and decide whether the time expended was reasonable related to the litigation as a whole, useful to the case, or of a type ordinarily necessary to secure the final result. *Planned Parenthood of Central N.J. v. Attorney General*, 297 F.3d at 266; *Maldonado v. Houstoun*, 256 F.3d at 184.  The standard is not whether  in hindsight the time expenditure was strictly necessary to obtain the relief achieved, but "whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990).  See *Planned Parenthood of Central N.J. v. Attorney General,* 297 F.3d at 270-71 (awarding fees for time spent on a witness who did not testify and a motion that was never filed because the effort appeared reasonable at the time).

District Judge Hayden applied this standard and made a finding of fact that the time objected to was reasonably related to the litigation.  Chateau Thomas Winery was a potential plaintiff whose owner remained in the case as a witness (see Thomas Aff., Dist. Ct. Dkt 110-8) after the New Jersey ABC refused to consent to

let the winery join as a plaintiff.  Dist. Ct. Docket No. 91.  Keeping wineries involved in the case as plaintiffs was procedurally important to the success of the case because consumers alone might not have standing to challenge laws that licensed and regulated wineries.  Obtaining evidence from wineries and wine trade associations about how the laws at issue restricted wine sales was obviously important in proving the merits of a Commerce Clause claim.  Good lawyers build and maintain strong case.  Judge Hayden considered all this and agreed.  Opinion at 30-32, App. 34-36.  The New Jersey ABC offers no reason why her finding was clearly erroneous.

## III.  Other objections by the appellant are incoherent, vague, or otherwise not reviewable

Throughout the New Jersey ABC's brief appear scattered paragraphs that complain about some aspect of the fee litigation, but are too incoherent, vague, or undeveloped to be reviewable.  See *Southwestern Pa.  Growth Alliance v. Browner*, 121 F.3d at 122 ("courts generally should not address legal issues that ... have not [been] developed through proper briefing").  We will note them briefly, in the order in which they appear in the state's brief.

A.  The ABC complains that some of plaintiffs' time records were not detailed, not consolidated with each other, in different formats, undated, estimated or otherwise "so vague that they merited no compensation."  Appellant's Opening

Brief at 28-29, 31-32, and 32-33. The ABC cites no authority, does not explain where Judge Hayden abused her discretion, does not develop this into an argument, and does not reconcile its objection with cases such as *Washington v. Phila. County Ct. of Common Pleas,* 89 F.3d 1031, 1037-38 (3d Cir. 1996) ("not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted"); *Rode v. Dellarciprete*, 892 F.2d at 1190-91 (entries that "summarized the counsels' time spent in various general activities ... met the standards of specificity"); and *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) (fees may be based on "reasonable estimation of the number of hours expended").

B. The New Jersey ABC objects to time billed for what it calls filing a "losing motion to intervene and all time spent representing the party who tried to intervene. Appellant's Opening Brief at 34. The ABC cites to page 170 of the Appendix, which shows something quite different -- time plaintiffs spent in 2005 opposing motions to intervene filed by several New Jersey wine wholesalers who were seeking to intervene in opposition. See Docket Nos. 35, 37, 38, 40, 46 and 47 (App. 417-19). The ABC makes no coherent argument why time spent opposing a motion to intervene by parties aligned against you is not compensable.

C. The ABC objects to all time spent representing a "party who admitted no interest in the litigation and therefore sought to be dismissed." Appellant's Opening Brief at 35. The ABC points to Mr. Epstein's time spent responding to

discovery requests served on plaintiff Hansel Winery by the ABC and intervening defendants. (App. 213). Hansel Winery was a party to the lawsuit and the ABC cites no authority and makes no coherent argument why time spent with a party on discovery is not compensable. *Planned Parenthood of Central N.J. v. Attorney General*, 297 F.3d at 269-70 ("all hours reasonably expended" are compensable).

D. The New Jersey ABC suggests that some kind of "special care" is needed when fee awards are to be paid for by public funds, implying that plaintiffs should somehow get less than the full lodestar when a New Jersey government agency is the defendant. Appellant's Opening Brief at 37-38. The ABC makes no coherent argument and overlooks the fact that in civil rights cases, governmental units are usually the defendants. *See Failla v. City of Passaic*, 146 F.3d 149, 160-61 (3d Cir. 1998) (defendant's status as public entity irrelevant in determining fees).

## IV. Additional hours spent on this appeal

Plaintiffs' attorneys have spent an additional 48.33 hours preparing this brief. They are entitled to reasonable compensation for the time spent litigating the fee award itself. *Planned Parenthood of Central N.J. v. Attorney General*, 297 F.3d at 268. This seems especially true when the need to litigate has been initiated by the defendant. Heeding the courts' admonition that fee awards should not turn into a second litigation, however, we have tried to keep this time to a minimum by billing only for the attorney primarily responsible for preparing the brief, and not

billing for any work polishing the brief after the second draft.  See Addendum, Tanford Supp. Aff., infra at 42.

## CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, the judgment of the district court awarding plaintiffs $802,221 in attorneys' fees and expenses should be affirmed, and plaintiffs awarded an additional $29,000 for 48.33 hours spent responding to this appeal.

Attorneys for plaintiffs:

  s/  James A. Tanford
James A. Tanford  (JT 3918)
IN Attorney # 16982-53
Indiana University School of Law
211 S. Indiana Av., Bloomington IN  47405
(812) 855-4846
tanford@indiana.edu

Robert D. Epstein (RE9535)
Epstein Cohen Mendes & Seif
50 S. Meridian St., Ste 505
Indianapolis IN  46204
(317) 639-1326

Gary S. Redish (GR0066)
Winne, Banta, Hetherington, Basralian & Kahn, P.C.
21 Main Street
Hackensack NJ  07602
(201) 487-3800

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 9534 words, excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using WordPerfect X5 in 14-point Times New Roman.

  s/  James A. Tanford
James A. Tanford  (JT 3918)
IN Attorney # 16982-53
Indiana University School of Law
211 S. Indiana Av., Bloomington IN  47405
(812) 855-4846
tanford@indiana.edu


CERTIFICATE OF BAR MEMBERSHIP

The principle author of this brief, James A. Tanford, is a member of the bar of this Court.

  s/  James A. Tanford
James A. Tanford  (JT 3918)
IN Attorney # 16982-53
Indiana University School of Law
211 S. Indiana Av., Bloomington IN  47405
(812) 855-4846
tanford@indiana.edu

CERTIFICATE THAT ELECTRONIC AND PAPER BRIEFS ARE IDENTICAL

I certify that the text of the electronic brief is identical to the text in the paper copies.

 s/  James A. Tanford
James A. Tanford  (JT 3918)
IN Attorney # 16982-53
Indiana University School of Law
211 S. Indiana Av., Bloomington IN  47405
(812) 855-4846
tanford@indiana.edu

CERTIFICATE OF VIRUS SCAN

I certify that a virus detection program has been run on the file and that no virus was detected, using Microsoft Forefront Endpoint Protection Version 2.0.657.0 (2010).

 s/  James A. Tanford
James A. Tanford  (JT 3918)
IN Attorney # 16982-53
Indiana University School of Law
211 S. Indiana Av., Bloomington IN  47405
(812) 855-4846
tanford@indiana.edu

CERTIFICATE OF SERVICE

I certify that on April 15, 2013, a copy of this brief was served electronically

on the appellant's counsel, who is a Filing User, by Notice of Docket Activity

through the Court's electronic docketing system (cm/ecf).

               s/  James A. Tanford
              James A. Tanford  (JT 3918)
              IN Attorney # 16982-53
              Indiana University School of Law
              211 S. Indiana Av., Bloomington IN  47405
              (812) 855-4846
              tanford@indiana.edu

ADDENDUM:

### Affidavit of James A. Tanford

James A. Tanford, upon his oath, declares:

1.  I am an attorney at law, admitted to practice in Indiana, before the Supreme Court of the United States and the U.S. Court of Appeals for the Third Circuit.  I am competent to testify and make this declaration upon my personal knowledge.

2.  I am the attorney for plaintiffs in this action who has had primary responsibility for preparing the Appellee's brief in response to the New Jersey ABC's appeal of the fee award.

3.  In preparing the brief, I expended 48.33 hours as shown in my time records attached to this affidavit.  All time is recorded contemporaneously and accurately reflects time spent in research and preparation of the brief.

4.  In the exercise of billing judgment, I have not included time spent on the brief by co-counsel Robert Epstein and Gary Redish.

5.  I have written off all time spent polishing and improving the brief after the completion of the second draft because such time was not strictly necessary.

I hereby swear that the foregoing statements by me are true and that any willfully false statement is subject to the penalties of perjury.

Date: April 11, 2013                        s/  James A. Tanford
                                            James A. Tanford  (JT 3918)
                                            IN Attorney # 16982-53
                                            Indiana University School of Law
                                            211 S. Indiana Av., Bloomington IN  47405
                                            (812) 855-4846
                                            tanford@indiana.edu

-43-

TANFORD CONTEMPORANEOUS TIME RECORDS
FREEMAN V. NJ ABC

| 3/04/13 | 11:45-12:25<br>2:05-5:15 | Read State's brief, outline response, read new<br>cases cited by state | 3:50 |
| 3/08/13 | 11;40-12:20 | Work on brief outline and organization | 0:40 |
| 3/11/13 | 9:15-11:50. | Draft sections on which issues are contested, standards<br>of review | 2:35 |
| 3/12/13. | 8:30-11:40.<br>12:20-1:40<br>2:05-3:50 | Brief merits - Summary of law section<br>Prevailing parties, hourly rate sections<br>Start Yaron issue | 6:15 |
| 3/13/13 | 10:20-12:00<br>1;00-2:20<br>2:20-3:40<br>4:15-5:25 | Cont'd<br>Cont'd<br>Brief merits -  waiver sections<br>Cont'd | 5;30 |
| 3/14/13 | 10:05-11:50<br>12;15-12:50<br>1:25-2:45<br>4:00-5:10 | Brief merits - downward adjustment<br><br><br>Oliver winery section | 4:50 |
| 3/15/13 | 9:00-12:05<br>12:50-3:50 | Merits - work related to litigation as a whole | 6:05 |
| 3/24/13 | 3;55-4:40 | Work on brief, 2d draft preliminary sections | 0:45 |
| 3/26/13 | 4:20-4:50. | Cont'd | 0:30 |
| 3/27/13 | 10:25-12:00<br>12;15-2:00 | Cont'd (less 15 min student interruptions) | 3:05 |
| 3/29/13 | 2:20-4:55 | Cont'd | 2:35 |
| 4/3/13 | 10:20-12:05<br>1:15-2:50 | Substantive sections | 3;20 |
| 4/4/13 | 2:05-4:50 | Cont'd | 2:45 |
| 4/5/13 | 9:00-9:55<br>11:00-12:05<br>12:40-4:15 | Cont'd | 5:35 |

| | | | |
|---|---|---|---|
| 4/9/13 | 1:50-4:55 | 3d draft (incorporate Epstein suggestions) | 0 |
| 4/10/13. | 8:30-11:10. | 3d draft cont'd | 0 |
| 4/11/13 | 9:15-10:05 12:00-5:20 | 3d draft Cont'd | 0 |
| 4/15/13 | 8:25-10:05 | Final proofreading, citechecking, scanning | 0 |